Carey vs. German American Ins. Co. of New York.

CAREY, Respondent, vs. GERMAN AMERICAN INSURANCE COMPANY OF NEW YORK, Appellant.

*December 10, 1892 — January 10, 1893.*

*Insurance against fire: Change in possession by " legal process:" Attachment: Indivisible contract: Waiver of forfeiture.*

1. A writ of attachment issued according to law is "legal process" within the meaning of an insurance policy providing that it shall be void in case of a change in the title or possession of the property by legal process.

2. If the writ was valid when issued, it is immaterial that subsequently, after the property had been burned, the attachment was dissolved on the trial of a traverse of the affidavit therefor.

3. The change of possession which will avoid a policy in such a case need not be voluntary on the part of the insured or by process by his order or under his control.

4. Where the officer who levied an attachment upon property insured by such policy seized the same under the writ, taking such possession as would enable him to maintain trespass or replevin against a wrongful taker thereof, there was a change in the possession by legal process within the meaning of the policy. The evidence in this case is *held* to show such a change of possession, although the property remained in the warehouse in which it was stored.

5. Upon such change of possession taking place the policy became void *ipso facto*, and the company was not bound, upon receiving notice of the change, to declare it void or otherwise. *Wakefield v. Orient Ins. Co.* 50 Wis. 532, distinguished.

6. Although a portion only of the property was seized under the attachment, the policy became void as to the whole thereof, the contract being indivisible. *Burr v. German Ins. Co., ante*, p. 76, followed.

7. The policy provided that no agent of the company "shall be held to have waived any of the terms and conditions of this policy unless such waiver shall be indorsed hereon in writing." *Held*, that after the policy was issued and accepted a forfeiture could not be waived orally by an agent.

APPEAL from the Circuit Court for *Winnebago* County.

Action upon a policy of insurance against fire. The facts are sufficiently stated in the opinion. The defendant appeals from a judgment in favor of the plaintiff.

*H. W. Chynoweth,* for the appellant, argued, among other things, that as a matter of fact the possession was changed and the change continued until the property was destroyed. It was never delivered back to the assured. Not only was it a change in fact, but one in law, for the reason that the attachment was legally executed and such execution requires a reduction of the property to the possession of the sheriff. R. S. sec. 2736; *Brower v. Smith,* 17 Wis. 410; *Whitney v. Brunette,* 3 id. 621; *Rix v. Silknitter,* 57 Iowa, 262; *Bickler v. Kendall,* 66 id. 703; Drake, Attach. secs. 291, 292; Wade, Attach. sec. 129. Not only the language itself, but the spirit of the contract shows that no property in litigation is to be included in the risk assumed. Clauses in insurance policies where the meaning is plain are given the full force and effect of the language used. See *St. Paul F. & M. Ins. Co. v. Archibold,* 16 Ins. L. J. 153; *Wenzel v. Comm. Ins. Co.* 67 Cal. 438. The evidence fails to show a waiver in fact. *Bosworth v. Merchants' F. Ins. Co.* 80 Wis. 393; *Knudson v. Hekla F. Ins. Co.* 75 id. 203; *Bonneville v. Western Assur. Co.* 68 id. 298. No parol testimony upon the subject was admissible. *Hankins v. Rockford Ins. Co.* 70 Wis. 1; *Kyte v. Commercial U. A. Co.* 144 Mass. 43; *Hale v. Mechanics' M. F. Ins. Co.* 6 Gray, 169; *Worcester Bank v. Hartford F. Ins. Co.* 11 Cush. 265; *Putnam T. Co. v. Fitchburg M. F. Ins. Co.* 145 Mass. 265; *Barrett v. Union M. F. Ins. Co.* 7 Cush. 175; *Fitchburg S. Bank v. Amazon Ins. Co.* 125 Mass. 431; *Batchelder v. Queen Ins. Co.* 135 id. 449; *Quinlan v. Providence W. Ins. Co.* 15 N. Y. Supp. 317; *Hill v. London Assur. Corp.* 9 id. 500; *Walsh v. Hartford F. Ins. Co.* 73 N. Y. 5; *O'Reilly v. Corp. London Assur.* 101 id. 575; *O'Brien v. Prescott Ins. Co.* 134 id. 28; *Enos v. Sun Ins. Co.* 67 Cal. 621; *Suggart v. Lycoming Ins. Co.* 55 id. 408; *Gould v. Dwelling House Ins. Co.* 90 Mich. 302; *Universal M. F. Ins. Co. v. Weiss,* 106 Pa. St. 20; *German Ins. Co. v. Heiduk,* 30 Neb. 288; *Hutchinson v. West-*

*ern Ins. Co.* 21 Mo. 97; *Carpenter v. Providence W. Ins. Co.* 16 Pet. 495.

*John J. Wood, Jr.*, attorney, and *Gabe Bouck*, of counsel, for the respondent, as to what constitutes a waiver and the legal right of an agent to waive, cited *Miner v. Phœnix Ins. Co.* 27 Wis. 693; *Killips v. Putnam F. Ins. Co.* 28 id. 472; *McBride v. Republic F. Ins. Co.* 30 id. 562; *Devine v. Home Ins. Co.* 32 id. 471; *Parker v. Amazon Ins. Co.* 34 id. 363; *Webster v. Phœnix Ins. Co.* 36 id. 67; *Wright v. Hartford F. Ins. Co.* id. 522; *Winans v. Allemania F. Ins. Co.* 38 id. 342; *Roberts v. Continental Ins. Co.* 41 id. 321; *Gans v. St. Paul F. & M. Ins. Co.* 43 id. 108; *American Ins. Co. v. Gallatin,* 48 id. 36; *Palmer v. St. Paul F. & M. Ins. Co.* 44 id. 204; *Badger v. Phœnix Ins. Co.* 49 id. 396; *Wakefield v. Orient Ins. Co.* 50 id. 532; *Schomer v. Hekla F. Ins. Co.* id. 579; *Schafer v. Phœnix Ins. Co.* 53 id. 361; *Osterloh v. New Denmark M. H. F. Ins. Co.* 60 id. 126; *Alexander v. Continental Ins. Co.* 67 id. 422; *Oshkosh G. L. Co. v. Germania F. Ins. Co.* 71 id. 454; *Dunbar v. Phenix Ins. Co.* 72 id. 492; *Renier v. Dwelling House Ins. Co.* 74 id. 89. A technical seizure, unaccompanied by any change of actual possession or increased risk, would not avoid the policy. *Commonwealth Ins. Co. v. Burger,* 42 Pa. St. 285; *Smith v. Farmers' & M. M. F. Ins. Co.* 89 id. 287. The dissolution of the attachment was an adjudication that there was no valid writ. It was not, therefore, *legal process* within the meaning of the policy. *Phila. F. & L. Ins. Co. v. Mills,* 44 Pa. St. 241; *Runkle v. Citizens' Ins. Co.* 6 Fed. Rep. 143; *Miami V. Ins. Co. v. Stanhope,* 10 Ins. L. J. (Ohio), 159.

ORTON, J. On the 14th day of September, 1889, the appellant company issued to the respondent a policy of insurance for $2,500 on his cranberries stored in his frame shingle roof warehouse, and in boxes piled next to said

warehouse covered with canvas, situated in Waushara county, in this state. The policy provided that a part of the loss should be paid to one W. D. Williams, as his interest might appear. The insured property was nearly totally destroyed by fire on the 19th day of the same month. The plaintiff recovered a judgment for $2,812.46 as damages, besides costs. In said judgment it is ordered that $700 of said damages be paid to the said Williams, as the mortgagee of a part of the property. The defendant company has appealed from said judgment.

In said policy of insurance there is the following condition of forfeiture, viz.: "Or if any change takes place in the title or possession of the property (except in case of succession by reason of the death of the assured), whether by sale, transfer, conveyance, legal process, or judicial decree, . . . then and in every such case this policy shall be void." The main defense was that a change in the possession of the insured property took place by legal process according to this condition, and that thereby the policy was forfeited and became void.

On the said 14th day of September, but after said policy was delivered and in force, one Frank W. Stanley, on the proper affidavit and bond, procured a writ of attachment against the property of said *James Carey*, the assured, and of one Richard Carey, to be sued out of the circuit court of Green Lake county; and on the same day the writ was duly served by a deputy sheriff, by attaching and seizing nearly all of said insured property, or except that part of it which had been conveyed to said W. D. Williams, consisting of 300 boxes of berries and the boxes containing them. The deputy sheriff made return on said writ that he had levied upon and seized said property on that day, and that he delivered to each of said defendants in the attachment copies of said writ, affidavit, and undertaking, and that before he could make a full inventory and ap-

praisement of said property taken by the writ, all of it, except fourteen boxes of cranberries and the boxes containing them, was destroyed and consumed by fire on the 19th day of September, 1889; and that he afterwards made an inventory of the part thereof not so destroyed, and had the same duly appraised, and delivered to the defendants therein copies of such inventory and appraisement. This brings us to the main questions in the case. The learned counsel of the respondent contends (1) that the said writ of attachment was not a "legal process," mentioned in said condition; (2) that a change of possession of the property did not take place by such pretended levy of the attachment; (3) that, upon the company having notice of such change in the possession, it should have exercised its option to continue the policy or to declare it forfeited and void; (4) that there was a waiver of the condition and forfeiture by the local agent of the company, who negotiated the insurance.

1. Was the writ of attachment *process?* The statute would seem to settle this question beyond dispute. Sec. 2421, R. S., provides how "process" may issue. It shall be tested in the name of the judge, signed by the clerk, and sealed with the seal of the court. Sec. 2591 provides that the clerk may deliver to any attorney " blank *process* and seals." Sec. 2420 provides that circuit courts may issue "writs, *process*, and commissions." Sec. 725: The sheriff, under sheriff, and deputy may execute all *processes*, writs, precepts, and orders. Sec. 2730: The writ of attachment is issued by the clerk at request. It is directed to the sheriff by the state, attested in the name of the judge, and sealed by the seal of the court; and before executed an affidavit must be made and an undertaking given. Sec. 2736: The officer having the writ of attachment shall execute it by *seizing* the property of the defendant to satisfy the demand. This writ has all the requisites of any

writ or *process* named in the statutes. All writs are called "process" in the statutes. A writ is process, and process is a writ, interchangeably. If this writ of attachment is not process, then we have no process in this state. This writ was issued strictly according to law, and has all the requisites of a process anywhere.

2. Did the sheriff, in serving the writ, take possession of the property, or did he dispossess the insured? (1) The sheriff returns "that he *seized* the property on the writ." (2) *James Carey*, the plaintiff, testified on the trial "that he told Tucker, the agent, that Stanley had attached their berries, and that he was going to try and fix it up, and pay Stanley." (3) The plaintiff, long after the fire that destroyed the property, traversed the affidavit in the attachment in order to have it dismissed. If it had not been fully served, it could do no harm. (4) The questions and answers in the special verdict on the traverse assume a full service of the writ and levy on the property: "*First.* What were the number of boxes of cranberries *levied upon under the writ of attachment?* Answer. 1,658." "*Seventh.* What other property of defendants was *seized* under the attachment, and destroyed by the fire?" Answered by the court. "*Eighth.* The value thereof when *seized?*" "*Tenth.* At the time of the *seizure,* how many berries remained unpicked?" "*Twelfth.* Were the berries that remained unpicked lost and injured by *reason of such levy and seizure* under said writ of attachment?" (5) The special verdict in this case *finds* that a levy of the attachment had been made. The first question is: "On the Monday next after the *levy* under the Stanley attachment, did A. L. Tucker, the local agent of the defendant, at Berlin, Wis., have knowledge that the *levy proved* under the Stanley attachment *had been made?*" Answered by the court, "Yes." This question assumes that the levy had been proved. The second question is: "Did such local agent, on said Monday

*after the levy* under said Stanley attachment, and after he
had knowledge of *such levy*, agree with the plaintiff that
the defendant's policy should remain in force upon the
property insured?" Answer, "Yes." There is not only a
specific finding of the fact that a levy had been made, but
the finding that the company waived the forfeiture is based
upon such fact. The statute requires the officer having the
writ of attachment to *seize* the property of the defendant,
and the officer returns that he did seize the property; and
the fact that he *levied* upon the property, or *seized* it, is
found by the jury and by the court, and is a conclusive
matter of record, and really not open for argument. D. C.
Evans, the deputy sheriff who served the writ, testified on
the trial that "he made a *levy by taking possession of the
berries, and continued in possession* until they were burned."
It may be said that there may be evidence of record that
the officer *seized* or *levied* on the property, but that that is
no proof that he took exclusive possession of the berries.
The legal definition of the word "seizure" is: "The tak-
ing possession of the property by an officer." "They are
seized when the goods are within the power of the officer."
Bouv. Law Dict. tit. SEIZURE. And so the legal definition
of "levy" is: "To have the property within the power and
control of the officer;" and the first definition is "seizure."
Id. tit. LEVY. "When an officer seizes and possesses him-
self of chattels under a writ, in such manner as to enable
him to maintain trespass or replevin against a wrongful
taker thereof (*Buckwheat v. St. Croix L. Co.* 75 Wis. 194),
then it is a sufficient levy and service of the writ. There
can be no doubt that the officer here stood precisely in that
relation to the property. There can be no question but
that Evans, the deputy sheriff, took exclusive possession of
the property under the writ, and that a change of the pos-
session of the property took place "*by legal process,*" in the
language of the condition.

3. Ought the company to have declared the policy void or continued it, on notice of the breach of this condition? This was the ground on which the circuit court refused to grant a new trial in this case. This condition is clear, explicit, positive, and of but one possible meaning. If any such change in the possession of the property takes place, "this policy shall be void,"—that is, *ipso facto* void. It is void when or as soon as this takes place, and is no longer a policy of insurance. There is no room for construction here. The learned judge bases his decision of that question on the case of *Wakefield v. Orient Ins. Co.* 50 Wis. 532. It will be seen that that case has no possible application to this. The condition in that case is: "If the premises insured shall at any time during the life of this policy become vacant by the removal of the owner or occupant, *without immediate notice to the company* and *indorsement made on the policy*, this instrument shall be void and of no effect." The circuit court held that this language conveyed a doubtful meaning, and was subject to *construction;* and that it meant, when the premises became vacant without notice to the company, the policy became void, subject, however, to the action of the company. The company must indorse on the policy either the forfeiture of the policy on account of such vacancy, or its consent to its continuance. When the insured has given notice of the vacancy, as in that case, he has done all he can do or is required to do. Then the company must act, and make the indorsement on the policy of the forfeiture or continuance of the policy. The company must notify the insured what action it intends to take. The company did not do this, and therefore there was no forfeiture. This view was adopted by this court, and such a construction of the condition was approved. Keeping in view the principle that a forfeiture is not favored and should not be declared unless compelled by the clear and positive terms of the con-

dition, we are yet compelled to hold that this condition cannot possibly mean anything different from what its language clearly imports, and that there is no chance for a more favorable construction on behalf of the assured.

4. Was such forfeiture waived by the local agent of the company who negotiated the insurance, or could it be waived by him? The local agent, Tucker, had very early knowledge of the levy of the attachment, and after such knowledge, according to the testimony of the plaintiff, consented to a continuance of the policy, and the jury so found in their special verdict. This brings us to consider the following stipulation or covenant of the policy: "And it is further expressly covenanted by the parties hereto that no officer, agent, or representative of the company shall be held to have waived any of the terms and conditions of this policy, unless such waiver shall be indorsed hereon in writing." The evidence of such pretended waiver was oral. It was objected to by the learned counsel of the appellant on that account, and the objection overruled. This we must hold was error. We know of no good reason, and are aware of no authority by the decisions of this court, that should cause us to declare the above covenant or stipulation void. It is a plain and explicit stipulation of the contract upon which the minds of the parties met, and is as binding on the assured as any stipulation in the policy. When the assured sought to have Tucker, the local agent, waive the forfeiture which he virtually admitted had taken place by a change of possession of the property insured by legal process, he knew that by the terms of his policy he had no power or authority to waive it, unless it was indorsed on the policy in writing. This provision was a clear restriction and limitation of his power. It was his own fault that he failed or omitted to have such waiver so indorsed. The courts cannot relieve a party from the legal consequences of such an omission to abide by the plain

stipulations of his contract, or make a new contract for him different from the one made by himself.

But this question has already been decided by this court in recent cases. In *Knudson v. Hekla F. Ins. Co.* 75 Wis. 198, the stipulation of the policy was that "agents have no authority to make any verbal agreement whatsoever, for or on behalf of this company; and this company will not be liable for any agreement except such as shall be indorsed, signed, and dated in writing on this policy." The pretended waiver by the local agent was of the proofs of loss in verbal conversation. It was held that the agent had no power to waive conditions in the policy in that way, or not indorsed on the policy; and therefore such testimony was improper and should have been excluded. The chief justice, who wrote the opinion, cites *Hankins v. Rockford Ins. Co.* 70 Wis. 1. The stipulation in the policy in that case was: "No local agent can in any manner waive any condition of this policy." The agent had consented that the assured might put a mortgage on the property. Mr. Justice Cassoday said in the opinion: "It has been frequently held by this and other courts, in effect, that where a person was authorized by an insurance company to make a contract of insurance, he thereby had implied authority in doing so to waive stipulations as to the conditions of the property, or other facts *then* existing, and, it may be, as to subsequent conditions, if such waiver is made *at the time* of effecting the insurance. But those cases have no bearing upon the question here presented. The contract of insurance was completed in all its terms, and binding upon both parties. The plaintiff accepted it with all its conditions and limitations. In the absence of any fraud or mistake he was, on general principles, conclusively presumed to know its conditions." I may say, further, that, if the agent had knowledge of certain conditions of the property when the contract was being made, such knowledge entered into and became a

part of the contract, and modified it to that extent; but if such conditions, or a knowledge of them, occur subsequently, his power to waive them, or to change the contract in any respect, is governed strictly by the provisions of the contract. If he can waive any condition, he must do so only in the manner provided by the contract. In that case the attempted waiver was held a nullity. There is no difference in principle between that case and this. Numerous cases in other courts are cited in the opinion to sustain this doctrine, which need not be recited in this opinion.

The learned counsel of the respondent, with considerable plausibility, contends that the agent in the above case was *prohibited* from waiving any of the conditions in the policy, while here the agent is *permitted* to waive in writing, indorsed on the policy. But the stipulation here is both prohibitory and permissive. It in effect prohibits any agent from waiving any of the terms and conditions of the policy, unless in writing, indorsed on the policy, and permits the agent to do so in that way only. But in *Knudson v. Hekla F. Ins. Co.* 75 Wis. 198, the provision is nearly the same as in this case, and is both prohibitory and permissive, and yet no such distinction is made.

Cases in this court are cited by the learned counsel as being adverse to such a doctrine, such as *Renier v. Dwelling House Ins. Co.* 74 Wis. 89. In that case the agent knew of the mortgage on the property when he issued the policy, and, as said above in relation to such cases, he had the power to waive the condition. In *Gans v. St. Paul F. & M. Ins. Co.* 43 Wis. 108, the agent knew that the house was unoccupied before it was burned. This knowledge of the agent was held to be that of the company, and the company afterwards required further proofs of loss at considerable expense to the insured, and that waived the condition. These cases, together with others cited as being adverse to this doctrine, are materially different and inap-

plicable. We must therefore hold that the provision of the policy was binding on the assured, and that the agent neither did nor could waive it or the forfeiture of the policy under it, verbally or by parol, and that the pretended waiver by the agent was a nullity.

There are three subordinate questions raised by the learned counsel of the respondent to be considered.

First. The possession of all the insured property was not changed or taken away from the insured by the writ of attachment or "by legal process." Seven hundred dollars' worth of the insured cranberries covered by the mortgage of W. D. Williams were not taken by the writ. The property insured was *indivisible* and an entirety, so far as the risk was concerned. This condition, that the possession shall not be changed, was inserted in the policy to secure proper care of the property and protection from fire. The company knew the assured, and was willing to trust its possession to him, but not willing to trust it to unknown strangers and their questionable care. The possession of a large portion of the property by others would equally endanger the whole and expose it to loss. This question, however, is decided in a similar case on this calendar, of *Burr v. German Ins. Co., ante*, p. 76, and the question treated in the opinion of Mr. Justice CASSODAY by reference to previous cases in this court. It is therefore held that it made no difference whether the possession of all the property was changed or not, if the possession of a large or considerable portion of it had been so changed.

Second. That it was not intended that such an involuntary change of possession by a writ or process should forfeit the policy, but it must be by some act of omission or commission of the assured, or by a process by his order or under his control. It is held that, when an attachment is issued against a fraudulent debtor, he *suffers* it to issue and is responsible for it, because he could have prevented it by pay-

ing the debt when due and by not committing the fraud which is the ground or cause of it. But the company had the undoubted right to make such an event, voluntary or involuntary, endangering the property or increasing the risk, a condition of forfeiture. The insured voluntarily consented to the condition, and he cannot complain.

Third. Long after the fire the attachment was dissolved. It was held on a traverse of the affidavit that the writ never ought to have issued, and that there was no ground for it. Does such fact make the writ any less a "legal process" when served? It was a legal process when issued. It was issued by the authority of and according to law. It was based on a sufficient affidavit. The dismissal of the attachment on the trial of the traverse did not make the writ void when it issued. It was a protection to the officer and a valid process. It did not issue on the *truth* of the affidavit, although it was dismissed on its falsity. The law presumed the affidavit to be true, and authorized the writ. It was a legal process when it was served, and changed the possession of the property. That was sufficient. The possession of the property was changed by it at the time lawfully, and it put the officer in possession of it lawfully. It was this change of the possession that enhanced the risk and avoided the policy.

I have thus disposed of all the contentions of the distinguished counsel of the respondent. I have cited but few of the authorities found in the able brief of the learned counsel of the appellant. They will be in the case for reference. Our own adjudicated cases seemed to be sufficient on every question, and, when they are so, I seldom go abroad for authority. The case was very ably presented by the learned counsel on both sides. The exceptions are not specially considered. The main questions upon which the case depends only have been considered. The defendant company proved a good defense to the action, and the

court should have rejected the testimony tending to show a waiver of the condition of forfeiture, because such waiver was not indorsed on the policy in writing. The defendant was entitled to a judgment in its favor.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.

The severability of insurance in one policy is very extensively discussed and the authorities on the question analyzed and compared in a note to *Wright v. Fire Ins. Asso. of London* (Mont.), 19 L. R. A. 211.
— REP.

