## CLAUDE L. FRANKLYN v. TAYLOR HYDRAULIC AIR COMPRESSING COMPANY, LIMITED, PROSECUTOR.

Submitted April 3, 1902—Decided June 9, 1902.

1. The entry of an appearance in the minutes of the Circuit Court, in an attachment suit, in the following form, "for the purpose of moving to quash the attachment entered in the above-entitled cause," is not a general appearance in the cause.

2. A demand made by the defendant's attorney, upon the attorney of the plaintiff, to declare the residence of the plaintiff in attachment, after such a special appearance, will not be considered as a general appearance in the cause.

3. Nor will the giving of a notice of a motion (after such a special appearance) to strike out an order of the court validating the

sheriff's return to the writ, when the invalidity of such order is one of the grounds for quashing the writ, amount to a general appearance.

4. The word "process," as used in the attachment act, is very broad and cannot be considered as only synonymous with the word "summons." In the attachment act, the word "process" covers any legal writ to which a corporation under our laws may at any time and in any way be subject; and among these is the liability to become a garnishee by the proper service of a process of attachment in a suit between other parties, although it is neither the plaintiff nor defendant in the original suit.

5. A failure of the sheriff to "annex" the inventory and appraisement, though duly made, to the writ before the return thereof, may be cured before the defendant's appearance is entered by the annexation of the same under an order of the court.

---

On *certiorari* to the Camden county Circuit Court, bringing up an order refusing to quash a writ of attachment.

The motion to quash was heard in the Circuit Court before his Honor James H. Nixon, a judge of said court, who decided the same in an opinion, in substance as follows:

"This is a motion to quash an attachment, the defendant's appearance having been entered 'for the purpose of moving to quash the attachment entered in the above-stated cause.'

"The first question is whether the entry of such an appearance is equivalent to a general appearance.

"After a general appearance, a motion to quash the attachment will be refused. It has been repeatedly held that when a motion is made which can be granted only upon the assumption that the court has acquired full jurisdiction it is a general appearance. A motion to quash will not produce that result if its limited purpose is first declared on the record.

"The demand to know the plaintiff's residence cannot be construed into a general appearance. The notice that the defendant's attorney would move to strike out the court's order validating the sheriff's return having been given after the qualified appearance had been entered, and constituting one of the grounds upon which the motion to quash the writ is based, cannot be construed into a general appearance of the defendant and thus overcoming the effect of the previous spe-

cial appearance. The question therefore recurs to the merits of the motion itself.

"The agreed facts may be summarized as follows:

*"First.* The defendant is a foreign corporation and has no agent in the State of New Jersey upon whom process can be served.

*"Second.* The Continental Compressed Air Power Company, the garnishee, is a New Jersey domestic corporation, and at the time the writ of attachment in this cause was issued and executed, was indebted to the former company in the sum of $64,000, $17,718.11 being due and payable at that time, and the balance to become due in three different installments in March, June and December, respectively, in the year 1901. The principal office of the Continental Company in New Jersey was at No. 419 Market street, Camden, New Jersey, and its agent upon whom process could be served was the New Jersey Corporation Guarantee and Trust Company, with its office at the said No. 419 Market street. Frank H. Hansell was the secretary and treasurer and also a director of the New Jersey Corporation Guarantee and Trust Company, and a resident of the State of New Jersey. He was also a director of the Continental Compressed Air Power Company.

*"Third.* On the 26th of November, 1900, the plaintiff secured a writ of attachment against the Taylor Hydraulic Air Compressing Company, the non-resident company, the defendant in this suit, and the said writ having been placed in the hands of the sheriff of Camden county, he executed the same by attaching the said $64,000 due and to become due from the Continental Air Power Company, the garnishee, to the Taylor Hydraulic Air Compressing Company. The writ was executed at No. 419 Market street, Camden, New Jersey, which was and is the office of both the Continental Company, garnishee, and of its agent, the New Jersey Corporation Guarantee and Trust Company, and the manner of executing said writ was by the sheriff going to the office of the New Jersey Corporation Guarantee and Trust Company, the authorized agent of the Continental Air Power Company for the service of legal process, and declaring in the presence of Frank H.

Hansell, its secretary and treasurer, and of Joseph Burt, a credible person, that he attached the rights, credits, moneys, &c., in its hands due and owing to the defendant in the writ of attachment.

"*Fourth.* The said writ was returnable and actually returned into the clerk's office on December 1st, 1900, but no inventory and appraisement of the property attached was annexed to the writ, although the words 'inventory' and 'appraisement' were upon the writ, and it was signed 'John W. Sell, sheriff, and Joseph Burt, appraiser.'

"*Fifth.* Afterwards, between December 1st and 25th, 1900, an addition was made to the return by adding the following words: 'Of all said rights, credits, moneys, effects and debts so in the hands or possession of or owed by the said Continental Compressed Air Power Company, including therein the said special right, credit, money, effect or debt of $64,000, being hereby appraised at the sum of $32,000.'

"The appearance in order to move to quash the writ was entered April 26th, 1901, four months afterwards.

"The motion to quash is based upon two grounds—*first,* because the writ was not legally served, and *second,* because the return made by the sheriff when first filed in the clerk's office did not contain the full particulars of the appraisement, which have since been added, as above stated.

"As to the first objection, it is admitted that the defendant company is a foreign corporation, without any agent in New Jersey upon whom process may be served. It is also admitted that the Continental Company, the garnishee, is indebted to the said foreign company, and that the agent of the said garnishee in the State of New Jersey for the service of process is the New Jersey Corporation Guarantee and Trust Company, at No. 419 Market street, Camden, New Jersey.

"It is not contended that a writ of attachment sued out by a creditor of the Taylor company, the defendant, could be served in any other way than upon the Continental Company's legally-declared agent, the New Jersey Corporation Guarantee and Trust Company, but it is contended that the service having been made as it was by declaring the garnishment or

giving the warning in the presence of Frank H. Hansell, the secretary, treasurer and director of the last-named company, was not a legal execution of the writ..

"What other kind of service should have been made, or could have been made, under the circumstances and facts admitted, is not indicated in any way.

"I find nothing in our statutes to prevent a New Jersey corporation from designating another corporation in the state to be its agent, upon which process may be served, and when that is the situation, as in this case, the service may be made in the usual way that writs are served upon corporations— that is, upon its proper officers.

"To hold otherwise is to maintain that a New Jersey corporation, by naming another corporation instead of a natural person as its agent, for the service of process, may thus become exempt from any liability of garnishment, no matter what its indebtedness to foreign corporations or other non-resident parties who may have creditors residing in this state.

"The provisions of our Attachment act are very plain, and if the agent of the garnishee in this case had been an individual instead of a corporation, and service had been made upon him, its regularity could not have been questioned.'

"In the case of an individual, a legal service requires the sheriff to go to the garnishee in person to attach rights and credits; but the same service, upon the proper agent for the service of process of a corporation, at its principal office, is equivalent in its legal effect when it is the proper party to be garnisheed.

"The contention is made that the words in the Attachment act in reference to the agent that he is one 'upon whom process against the corporation may be served,' does not apply to the garnishment of rights and credits in the hands of a debtor of the defendant, and that this suit being a suit by Franklyn against the Taylor company, the writ is in no sense such a 'process' as is meant in the statute, and that the Continental Air Company's agent, the New Jersey Corporation Guarantee and Trust Company, is not subject to such a 'process.' This contention is not sound.

"The word 'process' is very broad, and, as used in the act, it cannot be considered as only synonymous with the word 'summons.' A summons is, of course, a process, but many kinds of process are not a summons, and the word in the Attachment act means any kind of legal writ to which a corporation under our laws may at any time and in any way be subject, and among these is the liability to become a garnishee by the proper service of a 'process' of attachment in a suit between other parties, although it is neither the plaintiff nor defendant in the original suit.

"Our Attachment act gives no greater immunity to an artificial person than to a natural one in this respect.

"There is no reason found to quash the attachment upon the first ground mentioned.

"The second ground urged—that the return when first filed in the clerk's office did not have the appraisement attached to the writ and therefore all the proceedings are a nullity, raises the question whether the inventory and appraisement of what is attached is such an essential part of the sheriff's duty that an omission to make it before the writ is returned invalidates all else that may have been done.

"The Attachment act says (section 16) that the inventory and appraisement shall be made by the sheriff and a freeholder and be-dated and signed and annexed to and returned with the writ.

"It is a duty distinct and separate from the execution of the writ itself.

"It follows after the execution of the writ, which comes to him as the mandate of the court under its official seal. Any failure to properly execute the writ itself would be vital, but an omission to perfect the inventory and appraisement and 'annex' it before the exact return day mentioned in the writ is, I think, only incidental.

"To hold otherwise is to put the most important and valuable legal rights in the power of the sheriff and to enable him by inadvertence, carelessness, collusion or otherwise to fail to annex an inventory and appraisement until a day or two after

he had filed his return in the clerk's office and thus overthrow the whole proceedings.

"The language of the act as to the appraisement to be annexed is only directory, and if it is added within a reasonable time afterwards, and before an appearance by the defendant has been entered, or bond given by the garnishee or any right is prejudiced by the sheriff's delinquency, it furnishes no adequate ground for quashing the whole proceedings and perhaps defeating the ends of justice.

"The law does not prescribe that the execution of the writ and the appraisement shall be simultaneous, and the appraisement in this case was annexed to the writ before any appearance, either general or special, had been made by the defendant company.

"There being no reason to quash the attachment, either because of a defective execution of the writ or because the inventory and appraisement were not annexed before its return to the clerk's office, it becomes unnecessary to discuss the order of the court granted on the 15th day of March, 1901, validating the amendment of the return of the writ, for, in this view of the case, such an order was not, in fact, necessary, and if from an excess of caution it was thought wise to obtain it, the rights of no one can be prejudiced by letting it stand.

"If, in deciding this motion to quash, it was necessary to dispose of the motion to strike out the order, I should hold that no order could be made that would validate a defective execution of a writ of attachment, but that an order could properly be made to permit the sheriff to rectify a defective return before a general appearance had been entered by the defendant.

"The motion to quash the attachment is denied, with costs."

Before Justices FORT, HENDRICKSON and PITNEY.

For the prosecutor, *John Meirs.*

For the defendant, *Henry I. Budd.*

PER CURIAM.

The order of the Circuit Court in this case is affirmed, for the reasons given by the learned Circuit Court judge, the substance of whose opinion we have placed at the head of this memorandum.

The defendant is entitled to costs.