**PAUL H. ASCHKAR & COMPANY,**
Petitioner,

v.

**The Honorable Jesse W. CURTIS,**
Respondent.

No. 18948.

United States Court of Appeals
Ninth Circuit.

Dec. 27, 1963.

Rehearing Denied Feb. 14, 1964.

Beilenson, Meyer, Rosenfeld & Susman and Gary A. Schlessinger, Beverly Hills, Cal., for petitioner.

Rodkin & Blum and Melvin C. Blum, Beverly Hills, Cal., for respondent.

Before ORR, MERRILL and BROWNING, Circuit Judges.

MERRILL, Circuit Judge.

These proceedings bring to us for review the order of respondent judge vacating a writ of attachment issued in a civil action pending before him. Petitioner seeks a writ of mandamus directing respondent to vacate his order and to restore the writ of attachment.

■ The action in connection with which the attachment was issued was brought by petitioner in the District Court for the Southern District of California, under the fraud and antimanipulation provisions of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa. The defendant was a corporation subject to service of process in New York, and service of the summons in this action was made on it there. By the attachment petitioner sought to reach assets of the defendant in the State of New York and debts owing to defendant by persons residing or doing business in that state. At issue is the jurisdiction of the district court in California to reach by attachment such property and debts.

Petitioner contends that such jurisdiction is conferred by the following language of § 78aa:

"Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district [1] or in the district wherein the defendant

1. This phrase refers to the language of the preceding sentence in the section: "Any criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred."

is found or is an inhabitant or transacts business, and *process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found"* (emphasis added).

Identical or similar extensions of the territorial limits on service of process have been authorized by Congress for suits brought under the Securities Act [2] and antitrust laws,[3] certain actions under the Interstate Commerce Act,[4] actions of interpleader,[5] and for serving a stockholder's corporation in his derivative suit.[6] Numerous decisions have found in such extending legislation the authority to obtain personal jurisdiction over a defendant by causing him to be served with summons in a foreign district;[7] and it is not disputed that in this case § 78aa authorized the district court in California to issue a summons which, when served on the defendant in New York, subjected the defendant to the in personam jurisdiction of the California court. The question here, however—one which apparently has not heretofore been resolved under any of these process-extending statutes—is whether Congress also intended by use of the word "process" in this section to include writs of attachment and, in this fashion, to confer upon district courts a power to reach and control property and debts situated beyond the territorial limits of the states in which they are located.

In our judgment the section cannot be so construed.

Petitioner has cited to us other instances in which "process" has been construed to include attachment.[8] In no instance did such construction result in such an extension of jurisdiction as confronts us here.

█ It also appears that petitioner is correct in its contention that, as a matter of general usage, writs of attachment are included within the term "process" in the provision of F.R.Civ.P. 4(f) that "[a]ll process other than a subpoena may be served anywhere within the territorial limits of the state in which the district court is held, and, when authorized by a statute of the United States * * * beyond the territorial limits of that

2. 15 U.S.C. § 77v(a).

3. 15 U.S.C. § 22.

4. 28 U.S.C. § 2321.

5. 28 U.S.C. § 2361.

6. 28 U.S.C. § 1695.

7. E. g., Stella v. Kaiser (S.D.N.Y.1948) 82 F.Supp. 301 (alleged violations of Securities Act and Securities Exchange Act); Friedman v. United States Trunk Co. (S.D.N.Y.1962) 30 F.R.D. 148 (alleged antitrust violations); United States v. United States Freight Co. (S.D.N.Y. 1947) 80 F.Supp. 336 (action to enforce I.C.C. order).

8. Brown v. Beckham (6 Cir. 1943) 137 F. 2d 644, cert. denied (1944) 320 U.S. 803, 64 S.Ct. 430, 88 L.Ed. 485 (writ of attachment held covered by U. S. statute providing that "Whenever * * * process in law * * * issues from * * * a district court," by direction of the U. S. or its departments no bond shall be required); Franklyn v. Taylor Hydraulic Air Compressing Co. (1902) 68 N.J.Law 113, 52 A. 714 (statute relating to designating agent for service of "process," held applicable to serving such an agent with writ of attachment garnishing debt owed by agent's principal, which was a local corporation); Brown v. Beckwith (1905) 58 W.Va. 140, 51 S.E. 977, 978–979, 1 L.R.A.,N.S., 778 (statute providing that certain types of personal property shall be exempt from execution or other "process" held to include exemption of such goods from attachment); Carey v. German American Ins. Co. of New York (1892) 84 Wis. 80, 54 N.W. 18, 19–20, 20 L.R.A. 267 (provision that insurance policy becomes void if any change takes place in title or possession of the property "whether by sale, transfer, conveyance, *legal process,* or judicial decree" (emphasis added), held to become operative when writ of attachment procured against the insured property). See also Calif.Code of Civ.Proc. § 17(6), providing that "unless otherwise apparent from the context," the word "process" means "a *writ* or summons issued in the course of judicial proceedings" (emphasis added).

state."[9] Thus, we may assume that, just as its summons may reach throughout the state to obtain personal jurisdiction, so, a district court's writ may effectively attach property anywhere within the forum state—not merely within the former traditional jurisdictional limit of its district.[10]

But it does not necessarily follow from this broad meaning of "process" in Rule 4(f) that any Congressional legislation expanding the territorial limits of "process" automatically applies to all process, including attachment. It must be recognized that it is such special expanding legislation, rather than Rule 4 (f), which is the source of any such extension; and the word "process" in such legislation must be considered in the context of the statute as a whole. Thus viewed, we must ask here, as with any special legislation of this kind, whether *this* extension of the territorial limits of service of process was meant to achieve anything other than an extension of the power to obtain personal jurisdiction. We think that it was not. The quoted language of

§ 78aa simply does not aptly apply to property or to those owing debts to the defendant. If jurisdiction over property or debts had been contemplated the section would have permitted service of "process" in districts in which property of the defendant or persons liable to the defendant are located. It makes little sense to allow foreign attachment in those districts in which defendant may reside or be found and to deny it elsewhere. Congress, we are convinced, intended only to provide for extraterritorial service of the "process" necessary to obtain personal jurisdiction, and simply did not have the problem of foreign attachment in mind at all.

Petitioner urges us, notwithstanding, to construe the language of § 78aa in such a fashion as to further the Congressional purpose. It asserts that a narrow construction in this case would frustrate the Congressional intent that suits under the Act might be brought where any act or transaction constituting a violation occurred. This for the reason that a denial of such provisional remedies would destroy

9. F.R.C.P. 64 provides that attachment and other similar provisional remedies for the purpose of securing satisfaction of an ultimate judgment "are available under the circumstances and in the manner provided by the law of the state in which the district court is held," except that "any existing statute of the United States governs to the extent to which it is applicable; * * *" Professor Moore states that all writs under Rule 64 are "process" and hence Rule 4(f) determines the territorial limits within which such writs may be served—ordinarily the limits of the forum state. 7 Moore, Federal Practice, ¶64.06[2] (1955). See also 2 Moore, supra, ¶4.02, at 908. This analysis is supported by the 1937 note of the advisory committee, to Rule 64, stating that Rule 64, "adopts the existing federal law," and referring, for such law, to 28 U.S.C. § 726 (1940), which provided that "[i]n common-law causes in the district courts the plaintiff shall be entitled to similar remedies, *by attachment or other process*, against the property of the defendant, which are now provided by the laws of the State in which such court is held * * *" (emphasis added). This Act was repealed

by the Judicial Code Revision Act of 1948 for the stated reason that it was covered by Rule 64. H.R.Rep.No.308, 80th Cong., 1st Sess., p. A238 (1947). Further support for inclusion of attachments within "process" in Rule 4(f) is found in the fact that the analogous writ of execution on a judgment is also treated as "process," which, when issued by the district court rendering the judgment, may be served and effectively executed within the territorial limits specified in Rule 4(f). 7 Moore, supra, ¶69.03[2], at 2408. Virtually conclusive authority for such treatment is found in the fact that 28 U.S.C. § 838 (1940), which had provided that any writ of execution upon a judgment, issued by a district court rendering the judgment, may run and be executed in any district of the state in which the issuing court sits, was repealed by the Judicial Code Revision Act of 1948 for the stated reason that it was superseded by Rule 4(f). H.R.Rep.No.308, 80th Cong., 1st Sess., p. A240 (1947).

10. See Georgia v. Pennsylvania Rrd. (1945) 324 U.S. 439, 467, 65 S.Ct. 716, 731, 89 L.Ed. 1051: "Apart from specific exceptions created by Congress the jurisdiction of the district courts is territorial."

the effectiveness of suit in a district barren of assets or debtors of the defendant, by denying a litigant in such a district an equal opportunity to realize upon judgment.

We are not persuaded.

In the first place Congress has itself prevented the courts from assuring all litigants in all districts an equal opportunity for recovery and its anxiety that such be the result is thus subject to doubt. As we have noted, even under petitioner's construction of the Act, unless the property or obligor of a debt were located within the district of the defendant's residence, it could not be reached until the defendant visits the district of its location.

In the second place the granting of district court jurisdiction over property and debtors foreign to the district is a serious and debatable matter upon which the courts should not lightly proceed to judge what Congress would have done had it considered the question. This is particularly so, we feel, with respect to attachment—a remedy subject to abuse and any extension of which is controversial.[11] Even more particularly is this so where, as here, the extension sought would permit the law of the forum state to be imposed abroad with respect to matters upon which state laws are greatly divergent. Under Rule 64, F.R.C.P., the law of the forum will determine "the circumstances and * * * manner" in which attachment is available. Thus it would control in respect to such matters, among others, as the type of claim warranting attachment, the bond and affidavit requirements, property exempted from attachment, and the circumstances under which property may be released from attachment.[12]

Thus, although Congress clearly has decided that service to obtain personal jurisdiction in suits under § 78aa should be extended to foreign districts in which a defendant resides or is found, we think that this by itself cannot be regarded also as an implicit determination that jurisdiction to attach property and debts should be similarly expanded. Whether such an extension is appropriate is an independent question of policy, presenting different considerations. Since there is no evidence as to how Congress would have weighed and resolved the competing considerations bearing upon that question, we conclude that judicial assertion of extraterritorial attachment jurisdiction through an interpretation of "process" in § 78aa cannot be supported on the basis of legislative intent and accordingly is not warranted.

Petition for mandamus is denied.

11. See, e.g., Barceloux v. Dow (1959) 174 Cal.App.2d 170, 344 P.2d 41, 44: "It has been said that attachment is a harsh remedy at best in that an alleged debtor loses control of his property before the claim against him has been adjudicated. This being so, the provisions relating thereto should be strictly construed." G. W. Bull & Co. v. Boston & M. R. (1931) 344 Ill. 11, 175 N.E. 837 (rejecting garnishment of debt owed by company doing business locally to foreign corporation as basis for quasi in rem judgment against foreign corporation): "The remedies by attachment are in derogation of the common law and ought not to be extended by implication." Willshire v. Frees (1947) 184 Tenn. 523, 201 S.W.2d 675, 677: "[I]n so far as [attachment statutes] prescribe the causes for which attachment may issue they are very strictly construed, because 'the remedy is in derogation of the common law, harsh and summary in its operation, and very liable to be abused as an instrument of injustice and oppression.'" Compare Lastowski v. Lawnicki (1935) 115 N.J. Law 230, 179 A. 266, 269, emphasizing that the New Jersey legislation requires a "liberal construction," "in favor of creditors." See also Note, Corporate Shares: Attachment and Execution; Conflicting Policies of Negotiability and Collection of Judgments, 12 Hastings L.J. 335 (1961).

12. See 7 Moore, Federal Practice, ¶64.04[3], at 1511, ¶64.07[2], at 1522–1524 (1955).