In re AMERICAN FREIGHT
SYSTEM, INC., Debtor.

AMERICAN FREIGHT SYSTEM,
INC., Plaintiff,

v.

TEMPERATURE SYSTEMS,
INC., Defendant,

and

Firstar Bank Madison, Garnishee.

AMERICAN FREIGHT SYSTEM,
INC., Plaintiff,

v.

ROLLINS PROTECTIVE SERV.
CO., Defendant,

and

Wachovia Bank of Atlanta, Garnishee.

Bankruptcy No. 88–41050–11.
Adv. Nos. 90–7934, 90–7839.

United States Bankruptcy Court,
D. Kansas.

Oct. 24, 1994.

Lynn M. Stathas, Ross & Stevens, S.C., Madison, WI, Cindy Dillard, Bryan Cave, Overland Park, KS, for Firstar.

Keith W. Smith, Wachovia Bank of Atlanta, Atlanta, GA, for Wachovia Bank of Atlanta.

Kurt Stohlgren, Hillix, Brewer, Hoffhaus, Whittaker & Wright, Kansas City, MO.

John Foulston, U.S. Trustee, Wichita, KS.

## ORDER DETERMINING GARNISHEES' OBLIGATIONS UNDER GARNISHMENTS SERVED OUTSIDE THE DISTRICT OF KANSAS

JAMES A. PUSATERI, Chief Judge.

These proceedings are before the Court on the garnishees' answers to garnishment orders and the motion of garnishee Firstar Bank Madison (Firstar) for a determination of its obligations. Firstar appears by counsel Lynn M. Stathas and Cindy Dillard. Garnishee Wachovia Bank of Atlanta (Wachovia) filed its answer through Keith W. Smith, its "legal officer." The plaintiff-debtor American Freight System, Inc. (AFS or the debtor), the party seeking to enforce its judgments through the garnishments, appears by counsel Kurt Stohlgren. The judgment debtors have not appeared, although one sent a letter to Firstar. The Court has reviewed the relevant pleadings and is now ready to rule.

### FACTS

In Adversary No. 90–7934, defendant Temperature Systems, Inc. (TSI), filed an answer but later failed to respond to AFS's motion for summary judgment, instead directing its attorney to withdraw from the case because defending it was too expensive. After sufficient time had passed for the corporation to obtain substitute counsel if it intended to, the Court granted a default summary judgment for $1,160.80 plus pre- and postjudgment interest and costs of $30. Some time later, AFS had a garnishment issued to Firstar in Madison, Wisconsin, which answered that it had money belonging to TSI and would hold the garnished amount, $2,660.71, until further order of the Court. A short time later, Firstar indicated that TSI had sent it a letter asserting that the garnishment was legally ineffective because this Court had no jurisdiction over Firstar, and demanding that Firstar continue to make available to TSI all funds in its account.

In Adversary No. 90–7839, defendant Rollins Protective Service Co. (Rollins) did not file any answer, and the Clerk entered a default judgment for $5,308.35 minus a set-off of $140.82, plus pre- and postjudgment interest and costs of $40. Some time later, AFS had a garnishment issued to Wachovia[1] in Atlanta, Georgia, which answered that it had money belonging to Rollins and would hold the garnished amount, $8,462.72, until further order of the Court. Wachovia added that it believed the garnishment remedy available from this Court did not extend beyond the territorial boundaries of Kansas, citing *In re Curtina International*, 15 B.R. 993 (Bankr.S.D.N.Y.1981), and so the Court lacked jurisdiction to garnish money Wachovia held. It also denied "proper notice and service of process," but has provided no further explanation of these allegations.

### DISCUSSION AND CONCLUSIONS

The materials presented to the Court appear to raise three jurisdictional questions. First, TSI's letter to Firstar may be raising the question whether this Court may exercise personal jurisdiction over Firstar, presumably on the theory the Wisconsin bank has insufficient contacts with the State of Kansas. Second, the letter may be raising the

---

1. The Court notes the garnishment was actually directed to "Wachobia" rather than "Wachovia," but Wachovia has not expressly pointed out any errors in its name or address. It obviously received the garnishment.

question whether the Court has subject matter jurisdiction of the attempt to garnish funds held by an out-of-state entity not previously a party to the proceeding. Third, the letter and Wachovia's garnishment answer raise the question whether garnishments issued from this Court can be effective outside the State of Kansas.

■ The Court has previously addressed the first question in a number of adversary proceedings which AFS filed in connection with its bankruptcy case, and concluded that minimum contacts with the United States are all that is required when federal law authorizes nationwide service of process, as Federal Rule of Bankruptcy Procedure 7004(d) does in adversary proceedings (except for subpoenas). In another case, the District Court affirmed this Court's conclusion that service pursuant to the Rule gives it personal jurisdiction over any entity that has minimum contacts with the United States, without regard to the entity's contacts with the state in which the Court happens to sit. *In re Donald G. Atteberry, DVM, P.A. (Donald G. Atteberry, DVM, P.A., v. Barclays Bank PLC)*, 159 B.R. 1 (D.Kan.1993). To date, all the circuit courts that have addressed this question have reached the same conclusion. *See 4 Wright & Miller, Federal Practice and Procedure Civil* 2d § 1067.1 at 311 (1987) *(indicating all courts of appeal that have addressed the issue have applied a national contacts standard); see also Quinones v. Pennsylvania General Ins. Co.*, 804 F.2d 1167 (10th Cir.1986) *(under the provisions of former FRCP 4(f) [now found at FRCP 4(k)(1)(B) ], federal district court may exercise personal jurisdiction over persons brought in as parties under third-party claims or as additional parties if they have sufficient minimum contacts with area within 100–mile radius of courthouse, regardless of whether area is within one state or several states)*. Clearly, the Court may exercise personal jurisdiction over Firstar and Wachovia despite their apparent lack of contacts with the State of Kansas.

In many cases besides the two now before the Court, attorneys have expressed the view that it is unfair to hale their clients into court in Kansas because they have no contacts with the state and had no reason to expect they might have to come here to defend a lawsuit. This thinking no doubt arises in part from the extensive line of cases dealing with the Fourteenth Amendment's limits on state courts' power to exercise personal jurisdiction beyond the borders of their state, where the burden distant litigation imposes on the defendant has been a significant consideration. These limits are incorporated by FRCP 4 for service of process in federal district courts for most purposes. As a result, attorneys seem to leap easily to the conclusion the limits necessarily apply to federal courts for all purposes. However, in addition to FRBP 7004(d), the bankruptcy jurisdiction and venue provisions also make clear that Congress intended for bankruptcy courts to exercise jurisdiction beyond the borders of the states in which they sit.

The subject matter jurisdiction statute, 28 U.S.C.A. § 1334(b), gives the bankruptcy courts (as "units" of the district courts, 28 U.S.C.A. § 151, to whom bankruptcy matters are referred, § 157(a)) concurrent jurisdiction of "all civil proceedings arising under title 11, or arising in or related to cases under title 11." Section 1334(d) gives them exclusive jurisdiction "of all of the property, *wherever located,* of the debtor as of the commencement of such case, and of property of the estate." (Emphasis added.) A venue statute, 28 U.S.C.A. § 1409(a), permits the proceedings covered by § 1334(b) to be filed in the court where the bankruptcy case is pending, with two exceptions. The first exception is § 1409(b), which provides in pertinent part, "a trustee in a case under title 11 may commence a proceeding arising in or related to such case to recover a money judgment of or property worth less than $1,000 or a consumer debt of less than $5,000 only in the district court for the district in which the defendant resides." The second exception is § 1409(d), which provides that suits based on claims arising postpetition can be filed only where they could have been filed under applicable nonbankruptcy venue provisions. These provisions make clear that Congress considered the possibility distant defendants might be haled into bankruptcy court, and restricted that possibility in certain circumstances. In addition, venue may

be transferred "in the interest of justice or for the convenience of the parties." 28 U.S.C.A. § 1412. Here, Congress provided defendants protection against unfair and burdensome locations for litigation. Given the broad range in the size of the states, from tiny Rhode Island to vast Alaska, the Court cannot believe the Supreme Court would conclude Congress has violated the Constitution in these provisions, and instead use state lines, as it has under the Fourteenth Amendment, as a measure of the extent to which a federal court may exercise personal jurisdiction over out-of-state defendants. *See 4 Wright & Miller, Fed.Prac. & Pro.Civil* 2d § 1067.1 at 327 (1987) (*pointing out travel across state lines is no more burdensome than travel within a state*).

■ The second question arises because TSI's letter may be suggesting that this Court does not have subject matter jurisdiction over the debts the garnishees owe the judgment debtors. If so, it is wrong. In *Skevofilax v. Quigley,* 810 F.2d 378, 383–85 (3d Cir.) (*en banc*), *cert. denied* 481 U.S. 1029, 107 S.Ct. 1956, 95 L.Ed.2d 528 (1987), five of the ten judges of the Third Circuit joined in rejecting the argument that a federal court does not have ancillary jurisdiction to enforce its judgment through the garnishment of a third party's debt to the judgment debtor in the absence of a separate basis of federal subject matter jurisdiction over the third-party garnishee. The three dissenting judges agreed the court would have jurisdiction over the garnishee so long as it admitted it owed the debt to the judgment debtor, but dissented on the ground the garnishee had denied the debt and the district court had improperly adjudicated the judgment debtor's claim against the garnishee through postjudgment enforcement procedures rather than an independent proceeding as required by the state law incorporated by Federal Rule of Civil Procedure 69. 810 F.2d at 390–93. The concurring judge felt the majority opinion appeared to state an overly broad rule that a federal court has ancillary jurisdiction over any effort to enforce its judgments regardless of whether the judgment debtor's claim to money involves facts and parties unrelated to the original dispute, and the enforcement action involved in the case

could not be justified as the equivalent of a simple garnishment; however, this judge concluded that ancillary jurisdiction nevertheless existed under the circumstances. 810 F.2d at 388–90. Thus, all nine judges who joined an opinion on the point agreed that a federal court has ancillary subject-matter jurisdiction over garnishments of third parties who admit they owe money to the judgment debtor. The Court has found no other case addressing this question. As indicated, both garnishees have admitted they hold money belonging to an entity that owes a judgment entered by this Court. The Court concludes it has ancillary subject matter jurisdiction to reach that money in order to enforce its judgments.

■ The third question seems to be raised because the Federal Rules of Bankruptcy and Civil Procedure do not establish a uniform federal procedure for enforcing judgments, but instead largely incorporate the procedure followed in the state where the court asked to enforce the judgment sits. FRBP 7069 provides that FRCP 69 applies in adversary proceedings. Rule 69, in turn, provides in part:

> (a) Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court otherwise directs. The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable.

Thus, the Rule authorizes this Court's judgments to be enforced by execution, according to the state-law procedure used in Kansas, except to the extent some federal statute applies. Kansas law allows garnishment to be used in aid of or in lieu of execution. Kan.Stat.Ann. 60–714. Garnishment is therefore available to enforce judgments entered in federal courts in Kansas. In a case also involving the enforcement of a federal court judgment through a garnishment done

according to Kansas procedure, the Tenth Circuit held that federal rules of procedure have the force of a statute and therefore control the manner of service of process to enforce a judgment. *Rumsey v. George E. Failing Co.*, 333 F.2d 960, 962 (10th Cir. 1964); *see also 12 Wright & Miller, Fed. Prac. & Pro.Civil,* § 3012 at 69 (1973) *(agreeing that "any statute" in Rule 69 includes federal rules of procedure)*. Consequently, this Court is convinced that Rule 7004(d) supersedes the Kansas procedure for service of process and authorizes nationwide service of a garnishment order issued by a bankruptcy court located in Kansas. *See 9 Collier on Bankruptcy,* ¶ 7069.04 at p. 7069-3 to -4 (15th ed. 1994) *(asserting executions from bankruptcy courts may be served nationwide under Rule 7004(d))*.

Despite having reached this conclusion, the Court has nevertheless considered the decision in *In re Curtina International,* 15 B.R. 993 (Bankr.S.D.N.Y.1981), which addressed a similar problem concerning prejudgment remedies under FRCP 64 and the predecessor to FRBP 7064. Both Rule 7064 and its predecessor simply make Rule 64 applicable in adversary proceedings. Rule 64 provides in pertinent part:

> At the commencement of and during the course of an action, all remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the district court is held, existing at the time the remedy is sought, subject to the following qualifications: (1) any existing statute of the United States governs to the extent to which it is applicable ...

The case might be distinguished on the ground it involves the application of somewhat different language than that found in Rule 69, but the Court believes the main thrust of the provisions is so similar that the question of the extraterritorial reach of the incorporated state procedures should be answered the same under each Rule. The main underpinnings of the *Curtina* court's conclusion that Rule 64 could not be used to reach out-of-state property seem to be implicit assumptions that: (1) the predecessor to Rule 7004(d) (which also authorized nationwide service of process) did not constitute "any existing statute of the United States" under Rule 64; and (2) an order of attachment does not constitute "process" governed by Rule 64.

The first assumption appears to underlie the ruling because the court relied on *General Electric Credit Corp. v. Waukesha Building Corp.,* 259 F.Supp. 958 (W.D.Ark.1966), which held that a garnishment issued from a federal court in Arkansas, directed to a federal marshal in Tennessee, was void on its face because Arkansas law did not authorize garnishments to be directed out of state. The *General Electric* court quoted Rule 64 and then said: "There is no controlling federal statute applicable to this procedure and it follows that the law of Arkansas must control." 259 F.Supp. at 960. Because of the Tenth Circuit's decision in *Rumsey v. Failing Co.* regarding the word "statute" in Rule 69, this Court feels constrained to conclude that federal rules of procedure are likewise "statutes" within the meaning of Rule 64 and control service for prejudgment, as well as postjudgment, remedies such as attachment and garnishment. Consequently, in the Tenth Circuit at least, Rule 7004(d) does govern service of such prejudgment orders and permit them to be served nationwide.

The second assumption appears to underlie the *Curtina* decision because, saying it involved "a strikingly similar situation," 15 B.R. at 997, the court relied on *Paul H. Aschkar & Co. v. Curtis,* 327 F.2d 306 (9th Cir.1963), which held that the word "process" as used in the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, was not intended to include writs of attachment. However, in reaching that decision, the court noted that the word "process" as used in FRCP 4(f)— now 4.1(a)—does include writs of attachment, 327 F.2d at 308–09 & n. 9, before it went on to conclude other factors indicated the word was not so inclusive in the Securities Exchange Act. Thus, it seems the *Aschkar* court would have concluded Rule 7004, the bankruptcy version of Rule 4, does include writs of attachment in its provision that "all ... process except a subpoena may be

served anywhere in the United States." The *Aschkar* court did seem to embrace the notion that although Congress had clearly authorized nationwide service to obtain personal jurisdiction over a defendant, that did not mean it would have intended to expand jurisdiction similarly to permit the attachment of the defendant's property and debts. This Court is more inclined to think the assertion of personal jurisdiction is more intrusive than the assertion of jurisdiction over property, so that where Congress has provided for the former, it likely intended to grant the latter as well, at least if the question was considered. The *Aschkar* court's added concern about the harshness of the prejudgment attachment remedy, which takes control of a defendant's property before the claim against him has been adjudicated, of course is not involved in matters governed by Rule 69.

Thus, *Curtina* relies on a case that is based on an interpretation of "statute" in Rule 64 that is contrary to the Tenth Circuit's interpretation of the same word in Rule 69, and a narrow definition of "process" provided by a case that recognizes the definition is broader under Rule 4. For these reasons, the Court declines to follow *Curtina.*

Other cases provide at least tangential support for this Court's conclusion its garnishment orders effectively reached the funds held by Firstar and Wachovia. In a situation where the extraterritorial effectiveness' of postjudgment enforcement procedures is made more obvious by the fact that a statute, 28 U.S.C.A. § 2413, expressly provides that a writ of execution on a judgment in favor of the United States can be issued from the court that rendered the judgment and be executed nationwide, one court in effect concluded Rule 69 adopts the procedures of the issuing court's state as the federal law for executing on that judgment to the extent no other federal law controls. *United States ex rel. Marcus v. Lord Electric Co.,* 43 F.Supp. 12 (W.D.Pa.1942). That court, based in Pennsylvania, ruled that the predecessor to § 2413 made its execution order on such a judgment effective outside the state, and that Rule 69 made the Pennsylvania procedure for attaching bank deposits applicable even thought the law of New York, where the attachment occurred, did not authorize such attachments. 43 F.Supp. at 13–14. Apparently, the question rarely arises, for a leading treatise on federal civil procedure, after referring to § 2413, still states the conclusions in terms based on the specific facts of this case, rather than in general terms, saying: "Since Rule 69 expressly makes applicable 'the practice and procedure of the state in which the district court is held,' the law of Pennsylvania, authorizing attachment execution upon bank deposits, permitted execution of that kind in New York on a judgment in favor of the United States from a district court in Pennsylvania, even though New York law did not allow that relief." 12 *Wright & Miller, Fed. Prac. & Pro.Civil* § 3012 at 64 (1973) (*citing U.S. ex rel. Marcus v. Lord Electric to support this statement in the text, but citing no other cases on the question, either in the main volume or the 1994 supplement*).

■ Even where there is no clear federal law that would override applicable state postjudgment enforcement procedures, a federal court may have the power to enforce its judgment in a way that would not be permitted under the state's law. In two cases, the Fifth Circuit ruled that a federal court may order state officials to pay the court's judgment against the state despite provisions in the state's law that judgments against the state could be paid only through legislative appropriations. *Gates v. Collier,* 616 F.2d 1268, 1270–72 (5th Cir.1980); *Gary W. v. State of Louisiana,* 622 F.2d 804, 805–07 (5th Cir.1980), *cert. denied* 450 U.S. 994, 101 S.Ct. 1695, 68 L.Ed.2d 193 (1981). In *Gates,* the Circuit said, "[W]here a state expresses its unwillingness to comply with a valid judgment of a federal district court, the court may use any of the weapons generally at its disposal to ensure compliance." 616 F.2d at 1271. After reaching this conclusion, the court added, "If statutory authority is needed for the court's actions, it may be found in Fed.R.Civ.P. 70." Id. The Circuit quoted both these statements in reaching the same conclusion in *Gary W. v. Louisiana,* 622 F.2d at 806.

For these reasons, the Court concludes its garnishment orders effectively attached the

funds held by Firstar and Wachovia. Since the defenses raised are legally insufficient, AFS is entitled to orders directing the garnishees to pay the appropriate amounts to it from the garnished funds. A separate order to that effect will be entered in each case.

IT IS SO ORDERED.