BOSWORTH and others, Respondents, vs. THE MERCHANTS' FIRE INSURANCE COMPANY, Garnishee, Appellant.

*September 8 — November 17, 1891.*

(1) *Insurance against fire: Waiver by agent of condition against incumbrances.* (2) *Appeal: Costs for printing brief.*

1. An insurance policy provided that it should become void if the property should be mortgaged by the insured unless duly authorized by the agent of the company, and that no agent should have power to waive any condition of the policy, or should be deemed or held to have waived the same, unless such waiver should be written upon or attached to the policy. The property was mortgaged when the policy was issued. Afterwards the insured gave a second mortgage, and a week or two later asked the agent to "fix it on the insurance, so that it would be safe for" the second mortgagee. The agent said he did not know whether he could put it in the insurance, but would see about it. Afterwards he informed the insured that he could not protect the second mortgagee, as the loss had been made payable to the first mortgagee, but he thought "it would be all right anyway." *Held,* that this did not amount to a consent by the agent to the second mortgage, or a waiver of the condition relating thereto.

2. In this case the successful appellant is not allowed costs for thirty or forty pages of evidence unnecessarily included in its brief.

APPEAL from the Circuit Court for *Portage* County.

The appeal is from a judgment holding the *Merchants' Insurance Company* liable as garnishee of the principal defendant, Garrett Cleary, to whom a policy of fire insurance was issued August 13, 1888, by the Fire Insurance Association of London, England, covering certain personal property, a portion of which was destroyed by fire on June 5, 1889. The *Merchants' Insurance Company* had, by an agreement with the said Fire Insurance Association, on October 25, 1888, assumed the risk in question. Other facts will sufficiently appear from the opinion.

For the appellant there were briefs by *Elliott & Hickox,*

and oral argument by *Chas. T. Hickox.*   To the point that there could be no valid waiver by the agent otherwise than in writing, they cited *Walsh v. Hartford F. Ins. Co.* 73 N. Y. 5; *Cleaver v. Traders' Ins. Co.* 65 Mich. 527, 8 Am. St. Rep. 908; *Hankins v. Rockford Ins. Co.* 70 Wis. 1; *Marvin v. Universal L. Ins. Co.* 85 N. Y. 278; Wood, Fire Ins. 631, sec. 387; *Hill v. London Ass. Corp.* 9 N. Y. Supp. 500; *S. C.* 12 id. 86; *Hess v. Washington F. & M. Ins. Co.* 11 id. 299; May, Ins. (2d ed.), sec. 138; *Knudson v. Hekla Fire Ins. Co.* 75 Wis. 198; *Kyte v. Com. Union Ass. Co.* 144 Mass. 43.

For the respondents there was a brief by *Lamoreux & Park,* attorneys, and *Cate, Jones & Sanborn,* of counsel, and oral argument by *B. B. Park.*   To the point that if the agent had authority to waive in writing the conditions of the policy, he could waive by parol or acts *in pais,* they cited *Schomer v. Hekla Fire Ins. Co.* 50 Wis. 575–80; *Roberts v. Continental Ins. Co.* 41 id. 321; *Shafer v. Phœnix Ins. Co.* 53 id. 361–69; *Gans v. St. Paul F. & M. Ins. Co.* 43 id. 108, 113; *Viele v. Germania Ins. Co.* 26 Iowa, 9; *Winchester Ins. Co. v. Earle,* 33 Mich. 143; *Lamberton v. Conn. F. Ins. Co.* 39 Minn. 129.

The following opinion was filed September 29, 1891:

COLE, C. J.   The garnishee defendant admitted in its answer that it did agree with the London Insurance Association to assume all the risks of the said association within certain limited territory, within which territory the property insured in the policy issued to the judgment debtor, Garrett Cleary, was situated.   We may therefore assume that the garnishee would be liable for the loss, providing the insurance association would have been so liable on the facts disclosed in the evidence.

The controlling question in the case is whether there was a forfeiture of the policy by the additional incumbrance

which was placed on the insured property. The policy is very distinct that it shall become void if the subject of the insurance shall be mortgaged or otherwise incumbered by the voluntary act of the insured, unless duly authorized by the agent of the company. Another clause provides that no officer, agent, or representative of the company shall have power to waive any condition of the policy, or shall be deemed or held to have waived the same, unless such waiver shall be written upon or attached to the policy. The policy was issued in August, 1888, running for a year, and covered furniture and other personal property in the hotel of the insured. The property was destroyed by fire in the following June. It is admitted that there was an incumbrance on the property when the policy was issued, known to the agent Hyde, though there is a dispute whether this agent was informed of or knew the full amount of the incumbrance. The jury found, in answer to a question submitted, that the agent was informed of the full amount. After the policy was issued, another chattel mortgage was given by the insured on the insured property, and this, it is claimed, was a breach of the condition just referred to, and worked a forfeiture of the policy. It seems to us this objection is well taken, and must prevail.

We will take the insured's own testimony as to the facts relating to the giving of this additional mortgage, and as to the consent of the agent Hyde to the same. He says, in substance, that at the time of issuing the policy "there was a mortgage on the property held by Mrs. Murphy. I informed the agent of this mortgage, told him that it was for $3,000, and wanted him to put on the insurance papers Mrs. Murphy's mortgage claim. After the policy was issued, I gave another mortgage to my brother Thomas Cleary for $1,700. This was given the last of December, 1888, or the first of January, 1889. About a week or two after the giving of this mortgage I saw Hyde about it, and

told him I had borrowed some money of Tom, and wanted him to fix it on the insurance, so that it would be safe for my brother. He said he did not know whether he could put it in the insurance, but he would see about it and let me know. At a second interview, a day or two after, the agent informed me that he could not protect Tom, as the loss in the policy had been made payable to Mrs. Murphy, but he thought 'it would be all right, anyway.' "

If there was any consent given to the additional incumbrance by Hyde, or a waiver of the condition relating thereto, it must be found in or predicated upon this testimony, as it is a fair synopsis of what the assured testified took place or was said at the interview between him and the agent. It seems to us there is no ground for saying that the agent gave even verbal consent to the additional incumbrance, and that to so hold would be a great perversion of the language used by him. In the first place it should be observed that the insured does not pretend he saw Hyde as to the additional incumbrance until a week or two after he gave the mortgage to his brother. Had he seen the agent before giving the mortgage, and informed him of what he wanted to do, and the agent had said to him he thought it would be all right anyway, but failed for some reason to indorse his consent in writing on the policy, a somewhat different question would be presented. It might then be claimed with more show of reason that the insured was misled by the remark of the agent, and might well suppose that consent was given to the additional incumbrance.

If express consent, or what was equivalent to it, had been given, it would have bound the company, and operated as a waiver of the condition, under our decisions. *American Ins. Co. v. Gallatin*, 48 Wis. 36; *Hankins v. Rockford Ins. Co.* 70 Wis. 1; *Renier v. Dwelling House Ins. Co.* 74 Wis. 89; *Lamberton v. Conn. F. Ins. Co.* 39 Minn. 129; *Morrison*

*v. Ins. Co. of N. A.* 69 Tex. 353; *Combs v. Shrewsbury M. F. Ins. Co.* 34 N. J. Eq. 403. This remark is made upon the assumption that the agent whose conduct is in question had authority to give consent to further incumbrances by indorsing the same on the policy. For the purpose of this case we assume he had such authority; and the question is, Does the evidence show that he gave such consent? We feel constrained to hold that it does not. It will be remembered that a forfeiture had already occurred, and the evidence of the waiver of this forfeiture ought to be reasonably clear and certain. The proof of waiver is no stronger than it was in *Engebretson v. Hekla F. Ins. Co.* 58 Wis. 301; *Knudson v. Hekla F. Ins. Co.* 75 Wis. 198. In *Schomer v. Hekla F. Ins. Co.* 50 Wis. 575, the important question was whether Lawson was the agent of the insurance company so as to bind it by his acts in consenting to the additional insurance. There was really no room to doubt, upon the evidence, that he did so consent, but the question was, Had he authority to represent the company in the matter? We do not recollect any case where the evidence of waiver was as weak and unsatisfactory as the one before us, where the company has been held liable. Our conclusion, therefore, is that it does not appear that the company, by any officer or agent, ever consented to the additional incumbrance.

It is quite true that the jury, in answer to the sixth question submitted, found that Hyde did waive the condition in the policy against further incumbrance, by leading Garrett Cleary to believe that giving the $1,700 mortgage was not a breach of such condition of the policy; but this finding is not supported by the evidence in the case. The judgment should have been in favor of the garnishee, and that it be discharged from all liability in the action.

The attorney of the garnishee has printed thirty or forty pages of the evidence in his brief, for which the clerk will

not tax any costs. It was wholly unnecessary, and contrary to the rules of the court.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with directions to give judgment in favor of the garnishee.

ORTON, J., took no part.

. A motion for a rehearing was denied November 17, 1891.