STEVENS, Administrator, Respondent, vs. THE QUEEN IN-
SURANCE COMPANY, Appellant.

*February 3 — February 23, 1892.*

INSURANCE AGAINST FIRE. (*1*) *Subsequent incumbrances: Consent:*
*Waiver: Agency.* (*2*) *Entire contract: Distribution of risk.*

1. An insurance policy contained a condition that it should become
void if there should thereafter be any mortgage of the property not
consented to by the company, and provided that the local agent
issuing the policy should have no authority to alter such condition.
About ten months after the policy was issued, the local agent who
issued it negotiated for the insured a loan secured by mortgage of
the insured premises, and witnessed and took the acknowledgment
of the mortgage. Nothing was said at the time about the policy,
and the agent testified that it had passed out of his mind. *Held,*
that there was no consent by the company to the mortgage, and no
waiver of the forfeiture.
2. Though a policy of insurance on the buildings on certain land and
on personal property while contained therein distributes the risk to
the different items of property, it is an entire contract, and if it be-
comes void as to the buildings by reason of a mortgage of the prem-
ises without consent it becomes void as to the personal property
also.

APPEAL from the Circuit Court for *Grant* County.

This action was brought by the plaintiff, as administrator
of Greenberry Thompson, to recover against the defendant
company for a loss sustained by the plaintiff's intestate
under a policy of insurance issued May 6, 1884, by the de-
fendant company, whereby it insured said Thompson to
the amount of $2,000, distributed as follows: $200 on his
dwelling-house; $150 on his household furniture; $25 on
wearing apparel; $50 on his cabinet organ, while contained
therein; $300 on his frame barn and sheds adjoining; $600
on hay and grain contained therein; $525 on horses in the
barn or on the farm; $25 on farming utensils, tools, har-
ness, hay fork, and tackle; $75 on mower and reaper; and

$50 on buggy contained in the barn on said premises,— for the term of five years. A loss occurred by fire, January 6, 1889, and was total as to the buildings insured, and to the extent of $555 for household furniture and wearing apparel in the dwelling-house, harness and tools in said buildings, and the mower and reaper and hay and grain in the barn consumed by the fire. The policy did not protect any of the personal property so lost except when contained in said buildings.

It was provided that the policy should be and become void "if there shall now or hereafter be any mortgage . . . or other lien not herein consented to, or in case any change shall take place in the title, possession, or interest of the assured in the property hereby insured, or if any other person shall now or hereafter have any interest therein, . . ." without the insured first obtaining the written consent of the company; and it was stipulated that the policy "shall not be valid unless countersigned by the duly authorized agent of the company at the place of issue, and no such agent is authorized to alter the above conditions." The application for the policy showed that there was then a mortgage on the premises for $1,200, due in three years; and the policy was written and countersigned by one S. H. Taylor, as agent for the company.

On the 17th day of March, 1885, about ten months after the delivery of the policy, the insured mortgaged the premises on which said buildings were situated for $3,000, to secure a loan for that sum, $1,200 of which was applied, it appeared, to paying up the previous mortgage. This loan was negotiated by the said Taylor for the assured, and he witnessed the mortgage given to secure it, and took the acknowledgment thereof as notary public. Mr. Taylor, the agent of the company, testified, in substance, to his issuing and countersigning the policy as agent for the defendant company, to his negotiating the $3,000 loan subsequently

for the assured, and to witnessing the execution of the
mortgage given to secure the same, and taking the acknowl-
edgment thereof.   He testified that nothing was said by
the assured or by any one about the policy of insurance at
the time of negotiating the loan; that it was not called to
his attention in any way; that it did not occur to him to
associate the two together; that the first time they were
associated together was when the adjuster for the company
called his attention to the fact of the mortgage, after the
fire; that he had never had occasion to refer to the policy,
and that it had passed out of his mind.

The company denied liability on the ground of the exe-
cution and delivery of the mortgage, March 17, 1885, be-
cause it was made without the knowledge or consent of
the defendant, whereby the policy became void.   The court
held the policy valid, and the plaintiff had judgment for
the entire loss, $1,055; and the defendant company appeals.

For the appellant there was a brief by *Clark & Taylor*,
and oral argument by *S. H. Taylor*.

For the respondent there was a brief by *Herman Buch-
ner* and *T. L. Cleary*, and oral argument by *Mr. Buchner*.

PINNEY, J.   The representation contained in the applica-
tion of the insured for his policy, as to incumbrances on
the property, is regarded as a warranty, and is material to
the contract.   Its purpose is to ascertain the amount of the
interest of the insured in the property, as affecting the
judgment of the insurer as to the character of the risk, by
taking into consideration the motive which the insured may
have in the preservation of the property.   A statement on
this subject, substantially untrue as to the amount of in-
cumbrances, will avoid the policy.   2 May, Ins. § 290;
*Schumitsch v. Am. Ins. Co.* 48 Wis. 26–29.   Where the pol-
icy includes real property, and also personal property in
buildings thereon, the risk being distributed,— that is to

say, a certain sum on the buildings and a certain other sum on the personal property situated in such buildings, part of the realty,— a misrepresentation in respect to incumbrances which avoids the insurance as to the buildings avoids also the policy as to the personal property so insured. The contract of insurance, in such cases, is entire, and there can be no recovery for a loss of the personal property if there has been a material misrepresentation in respect to the incumbrances on the buildings. *Hinman v. Hartford F. Ins. Co.* 36 Wis. 159; *Schumitsch v. Am. Ins. Co. supra; Loomis v. Rockford Ins. Co.* 77 Wis. 89.

The object of the provision in the policy by which it becomes void "if there shall now or hereafter be any mortgage . . . not herein consented to, . . . or if any other person shall now or hereafter have any interest in the premises, . . . without the insured giving notice to the company and obtaining consent therefor as provided in the policy," is to secure to the insurer notice against any change in the amount of interest of the insured in the property, not consented to by the insurer, which may operate to diminish the motives of the insured to preserve it, or which may tend to expose it to danger from loss from incendiarism, and in order that the policy may be continued· in force only in case the insurer shall consent to the altered circumstances affecting the risk. Such conditions in policies "are to secure risks in which there shall be no motive for intentional or dishonest loss." *Redmon v. Phœnix F. Ins. Co.* 51 Wis. 301; *Hankins v. Rockford Ins. Co.* 70 Wis. 1. If the mortgage in question had been on the property at the time Mr. Taylor, the local agent, issued the policy, and he had been informed of its existence, the fact that it had not been mentioned in the application ·for the policy filled out by him would not invalidate it. *Renier v.·Dwelling House Ins. Co.* 74 Wis. 89–94; *Miner v. Phœnix Ins. Co.* 27 Wis. 693; *McBride v. Republic F. Ins. Co.* 30 Wis. 567;

*Wright v. Hartford F. Ins. Co.* 36 Wis. 522; *Mechler v. Phœnix Ins. Co.* 38 Wis. 665. It is true that, under our statute (sec. 1977, R. S.), whoever solicits insurance on behalf of any insurance company, or transmits an application to such company, or a policy to or from such corporation, or collects or receives any premium for insurance, or in any manner aids or assists in doing either, or transacts any business for such company, shall be deemed and held to be an agent for such company for all intents and purposes, but only in respect to each of the several matters mentioned. In this case an incumbrance for $3,000 was placed on the buildings insured, about eleven months after the policy was issued; and this fact rendered the policy void unless this incumbrance was consented to by the company, or the breach of the policy occasioned by the incumbrance was waived by it. It does not appear that Mr. Taylor did or said anything about the policy, or assumed to act for or represent the company in any respect concerning it, after he had issued it.

The plaintiff's counsel contended that inasmuch as Mr. Taylor, the agent of the company who issued the policy, negotiated the loan of the $3,000 secured by the mortgage for the insured, and witnessed the mortgage and took the acknowledgment of it as a notary, and as he did not notify the assured that the policy was avoided by the mortgage, and did not return or offer to return the unearned portion of the premium, the company had therefore waived the forfeiture, and, now that a loss has occurred, cannot be heard to insist upon it. The answer to this contention is found in the fact that by the terms of the policy Mr. Taylor, as local agent at the place of its issue, was not authorized to alter any of its conditions, and the insured is bound by this condition of the policy, and any attempted waiver by such agent merely by virtue of such agency, subsequent to the signing of the policy, is a nullity. *Hankins v. Rock-*

*ford Ins. Co.* 70 Wis. 1, and numerous authorities there cited. Besides, there is no proof of any act or acts or declaration on the part of the agent Taylor from which such consent or waiver can be inferred. The agent testified that nothing was said by the insured when the mortgage was given about the policy; that it did not occur to him until after the fire, having passed out of his mind. There is nothing to show that the company ever had notice of the existence of the mortgage until after the loss. There is, therefore, no ground for claiming that the company ever consented to the mortgage, or waived the forfeiture caused by its execution. The case of *Bosworth v. Merchants' F. Ins. Co.* 80 Wis. 393, and cases there cited, is decisive against the plaintiff. COLE, C. J., in that case said that "the evidence of waiver of forfeiture ought to be reasonably clear and certain," and held the evidence in that case, which afforded some slight ground for the contention of waiver, entirely insufficient, and added that the proof of waiver in that case was no stronger than in *Engebretson v. Hekla F. Ins. Co.* 58 Wis. 301, and *Knudson v. Hekla F. Ins. Co.* 75 Wis. 198, and said: "We do not recollect any case, where the evidence of waiver was as weak and unsatisfactory as the one before us, where the company has been held liable."

Inasmuch as the policy was an entire and indivisible contract, the claim under it for the loss of personal property must share the same fate as that for the buildings in which it was required to be in order to be within the protection of the policy.

For these reasons the judgment of the circuit court must be reversed, and the cause remanded for a new trial.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.