KEITH and another, Appellants, vs. ROYAL INSURANCE COMPANY OF LIVERPOOL, Respondent.

*March 24—April 17, 1903.*

*Fire insurance: Change of title avoiding policy: Waiver: Estoppel: Right of mortgagee.*

1. Property of a partnership was insured under a Wisconsin standard fire policy, providing that it should be void in case of change in the title to the property, unless otherwise provided by agreement indorsed or added. After the issuance of the policy the agent was informed that two of the partners had contracted to buy out the third. He told them that when the purchase was completed it would be necessary to have the third partner's interest in the policy assigned and the assent of the company indorsed on the policy, and that he would make the proper indorsements. He repeated this statement afterwards, before the transfer was made, but the partners, who were not familiar with business or the English language, understood him to mean that he would arrange the insurance all right upon mere notification of the transfer. Some time after the transfer was made one of the partners mentioned casually to the agent that they had completed buying out the third partner. No assignment of any interest in the policy was ever made and no written consent ever given by the company. *Held,* that there had been no waiver of the provision avoiding the policy.

2. The provision in the Wisconsin standard policy avoiding the policy in case of a change in the title is self-executing, and no duty is imposed upon the insurer upon his being merely informed of such a change. Mere silence of the insurer in such a case will not operate as a waiver of the forfeiture or an estoppel to assert it.

3. Under a policy issued to the owner of property and providing, with respect to a mortgagee, merely that the loss, if any, shall

be payable to the latter as his interest may appear, the insurer owes no other or different duty to the mortgagee than by its contract it owes to the insured. The mortgagee can recover solely in the right of the insured, and only when the latter can.

APPEAL from a judgment of the circuit court for Brown county: S. D. HASTINGS, JR., Circuit Judge. *Affirmed.*

Action to recover insurance by *Keith,* mortgagee, and *Huncrosky* as assignee for the benefit of creditors of the firm of Reindl & Jicha. The facts as found by the court, jury being waived, were substantially that a firm of Reindl, Novotny & Jicha, existing on November 28, 1898, and owning, amongst other property, a sawmill, executed mortgage thereon to the plaintiff *Keith,* with the usual agreement to keep insured, loss, if any, payable to the mortgagee; that the mortgagors thereupon arranged with one Peterson, local agent of the defendant and other insurance companies, to place $3,000 of insurance on said property, loss, if any, payable to *Keith* as mortgagee, and to renew such insurance from time to time; that he accordingly wrote three $1,000 policies in different companies, including defendant, for one year; that on the expiration thereof, December 18, 1899, the said Peterson, pursuant to said arrangement, issued three new policies, of $1,000 each, by the three different companies, and sent the same to *Keith,* and immediately sent to the firm of Reindl, Novotny & Jicha his bill for the premiums on said policies; that about January 1st or 4th Peterson called at the place of business of said firm to collect said bill, and was then informed that Reindl and Jicha had contracted to buy out their partner Novotny. Thereupon Peterson informed them that when such purchase was completed and conveyance executed it would be necessary to have Novotny's interest in the policy assigned to them and the assent of the company indorsed on the policy, and that he would make the proper indorsements. At or about this same time the assured, desiring further credit, gave, and Peterson accepted, a note for the premiums

on the several policies of insurance. Again, on March 10th, Reindl and Jicha informed Peterson that they had not as yet completed the purchase from Novotny, but expected to soon, and he made to them the same statement. . They were not familiar with business nor with the English language, and understood Peterson's statement to mean that he would arrange the insurance all right upon mere notification of the transfer. On March 17th Novotny did convey his interest in the partnership to his partners, by bill of sale of the personal property and by deed of the mortgaged and insured real estate. No assignment of Novotny's interest in the policies was ever made, the same were never presented to Peterson for an assent to such transfer, and the defendant never gave its written consent thereto or made any indorsement upon the policy. There is evidence that some time in May, at an interview having no relation to this insurance, one of the firm casually mentioned to Peterson that they had completed buying out Novotny. The policy was the Wisconsin standard.

The court concluded, as matter of law, that the transfer of Novotny's interest on March 17th, not having been assented to by indorsement on the policy, avoided the insurance, and accordingly rendered judgment for the defendant, from which the plaintiffs appeal.

*R. M. Bashford,* for the appellants.

For the respondent there was a brief by *W. H. Mylrea,* attorney, and *C. B. Bird,* of counsel, and oral argument by *Mr. Mylrea.*


Dodge, J. It being a conceded fact that one of the three owners of the insured property, on March 17, 1900, three months after the issuance of the policy, transferred his interest to his co-owners, the policy became *ipso facto* void by virtue of the provision therein, ·

"This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void . . .

if any change other than by the death of an insured take place
in the interest, title, or possession of the subject of insur-
ance,"
unless such forfeiture was waived in some way. *Keeler v.
Niagara F. Ins. Co.* 16 Wis. 523; *Carey v. German Am. Ins.
Co.* 84 Wis. 81, 54 N. W. 18; *Straker v. Phenix Ins. Co.* 101
Wis. 413, 77 N. W. 752. The contention of the appellants
is addressed to the establishment of some valid and effectual
waiver by acts or words of the local agent other than an agree-
ment indorsed on or added to the policy, and the counsel has
collected and presented with much vigor and ability in anal-
ysis the opinions of many courts upon the general subject of
waiver. By far the larger part of such authorities are, how-
ever, at best only applicable to a state of facts which appel-
lants indeed claim to exist in this case, but which is negatived
by the evidence and findings. Thus, many of the cases cited
are addressed to waiver of forfeiture or to propriety of ref-
ormation of the policy by reason of facts known to the agent
to exist at the time of entering into the contract of insurance,
and with reference to which it was understood such contract
was to be framed. In the case at bar, the contract of insur-
ance with the firm of Reindl, Novotny & Jicha was fully con-
summated before any suggestion of a prospective change in
that firm was brought to notice of the agent. *John R. Davis
L. Co. v. Home Ins. Co.* 95 Wis. 542, 548, 70 N. W. 59. The
policy was written and delivered exactly in accordance with
the understanding and contract which the parties then had,
and the assured had enjoyed its benefits for two or three
weeks. Thus the situation is distinguished from all that class
of authorities, and we need not consider them. Many other
cases, however, deal with the subject of waiver by acts of an
agent after a policy is in force and concededly valid according
to its terms. That the authority of such cases is at best doubt-
ful since our standard insurance policy has been made both a
contract and a law is certainly suggested by *Bourgeois v. N.*

*W. Nat. Ins. Co.* 86 Wis. 606, 57 N. W. 347; *Hobkirk v. Phœnix Ins Co.* 102 Wis. 13, 78 N. W. 160; *Temple v. Niagara F. Ins. Co.* 109 Wis. 372, 376, 85 N. W. 361. Here again, however, the primary question to be considered is what facts are disclosed by the record upon which to predicate waiver, even if the agent had full authority. Appellants assert an assurance by the agent that the policy would continue to be good notwithstanding a transfer, or, at any rate, that he would take such steps as would keep it valid. Even this, however, is negatived by the finding of the trial court to the effect that instead of any such assurance or promise the agent informed the assured that when the transfer took place it would be necessary to have assignment from Novotny and assent of the company *indorsed on the policy,* and that he would make the indorsement, but that the assured, not being familiar with business methods or the English language, misunderstood him to promise substantially as now claimed by their counsel. There is nothing to indicate that the agent had any knowledge that they had misunderstood him. This finding is excepted to, but upon careful examination we are unable to say that any clear preponderance of evidence antagonizes it. The witnesses to the conversations were present for observation by the trial judge. Even the printed record discloses such measure of confusion of idea and ambiguity of expression on the part of appellants that the conclusion might well be reached that, although they were testifying truthfully, the agent's more exact statement was the true one, and that conclusion might have been much more apparent on the trial. Further, assuming the honesty of all the witnesses, as the court apparently did, the probabilities are all in favor of the agent's version that he warned the assured of the necessity of presentation of the policies for indorsement, while assuring them there would be no trouble about it. True, there is less support for finding that such warning was given at the interview in January, for the agent, Peterson, does not categorically so testify—merely

that he never said anything else. We should hesitate to hold that the trial court was wrong, in the light of all the circumstances, in finding that such was the statement made by the agent which the assured misunderstood and quoted wrongly in their testimony; but the interview in January was immaterial, if in March, before the act which avoided the insurance occurred, the appellants were notified that they could not rely on expectation of continued validity after transfer without presenting the policy for indorsement. Thus it is apparent that the facts do not support the applicability of those authorities which predicate waiver upon promises or assurances of the agent made pending the life of a policy, and discussion of that class of cases is unnecessary.

There remains for consideration that part of appellants' argument which seeks to predicate waiver or estoppel against the company upon the fact that, some two months after the conveyance of Novotny to his co-owners of the insured property, one of the then owners told the agent that such conveyance had been made. This was done casually, and with no apparent reference to the policy now in suit. Assuming, as counsel does, notwithstanding *Stevens v. Queen Ins. Co.* 81 Wis. 335, 51 N. W. 555, and *Bourgeois v. Mut. F. Ins. Co.* 86 Wis. 402, 407, 57 N. W. 38, that such knowledge of the agent is imputable to his principal, his argument seems to be that from mere silence and omission to compute and return the unearned portion of the premium the company either waives the forfeiture or is estopped to assert it. Such an argument, to be sustained, must have as a premise the proposition that if the insurer intended to stand upon this absolute and self-executing provision of the policy he was bound to do something other than remain silent. Nothing in the contract which the parties had made imposed any such duty. The forfeiture clause made the policy void upon the happening of the event, not merely voidable on the exercise of election or doing of some other act by the company. It certainly

was under no obligation to proclaim to assured the legal effect of their act, for they were presumed to know that. The conditions under which it was to return unearned premium were expressly prescribed by the policy and the law, namely, upon surrender of the policy. Sec. 1941—52, Stats. 1898. The choice lay not upon the company, but with the assured, whether the latter would attempt to obtain a written indorsement of consent to the change of title, and thus revive the policy, or would exercise their alternative right to a return of unearned premium upon surrender of the policy. Besides this, there is neither proof nor finding that the assured in any wise relied upon silence of the company after the conversation in May, at which the fact of Novotny's conveyance was mentioned. Apparently they at all times relied upon their own misconstruction of what the agent had said to them in March, as found by the court. Cases cited by appellants with reference to exercise of right reserved to the insurer to cancel at its option upon notice and return of premium, of course, have no application. On the other hand, this court has already spoken in negation of appellants' contention in no uncertain terms. *Bosworth v. Merchants' F. Ins. Co.* 80 Wis. 393, 49 N. W. 750; *Stevens v. Queen Ins. Co.* 81 Wis. 335, 339, 51 N. W. 555; *Carey v. German Am. Ins. Co.* 84 Wis. 80, 87, 54 N. W. 18; *Bourgeois v. Mut. F. Ins. Co.* 86 Wis. 402, 57 N. W. 38. Citations by counsel or examination by the court of inconsistent *dicta* or decisions by courts of other states can hardly be profitable. So far as they contravene the rule of the foregoing cases, they are not in accord with the law of Wisconsin.

We are unable to find established by the evidence any conduct on the part of the defendant which, under the law established in this state, can be held to waive the unambiguous declaration of the policy that it should become void upon the contingency which happened, nor which can estop the defendant from insisting upon such forfeiture.

2. Appellants claim further that because the owners of the property, by their mortgage, had covenanted to maintain insurance thereon to protect *Keith,* the mortgagee, therefore the company must be deemed to be under some obligation to exercise diligence to protect his interest. Incidentally we may remark there is no proof of any knowledge by the insurer or its agent of what the mortgage contained, or that it was expected to write a policy to satisfy its requirements. The proof is, however, clear that the only contract for insurance was with the owners; they ordered it, and defendant wrote, as it must, only what they ordered. Presumably it satisfied *Keith,* for during nearly two years he had made no objection. There are three perfectly well-known methods by which mortgagees are customarily protected by insurance against loss of their security. The first, and far the most common, method is that here adopted; namely, an ordinary contract to insure the owner, "loss, if any, payable to the mortgagee as his interest may appear;" secondly, the same contract supplemented by what is commonly called a "subrogation clause," whereby the company, in addition, binds itself to the mortgagee to pay him the insurance regardless of certain breaches of condition by the owner, on condition that it become subrogated to the mortgagee's rights against the property and the mortgagor; and, thirdly, but seldom, a direct contract with the mortgagee, insuring him against loss by fire. To the last of these, the owner is no party; to the second, both owner and mortgagee are parties; and to the first, only the owner is in any contractual privity with the insurer, except as the mortgagee may avail himself of the contract between the others for payment to him. He has no direct rights against the insurer, but recovers solely in the right of his mortgagor. He can recover only when the latter can. *Wunderlich v. Palatine F. Ins. Co.* 104 Wis. 395, 80 N. W. 471, and cases cited. The company can be charged with no higher or different duty to such mere appointee than by its contract it owes

to the insured. Whatever might be the insurer's duty of notice to the mortgagee upon the exercise of an election to cancel required to be notified to the assured himself, it could owe no such duty of an event notice of which was not required to be given to any one. The contract here sued on is obviously of the first type above mentioned, and indisputably was the form of contract applied for by the owner of the property, with whom alone it was made.

*By the Court.*—Judgment affirmed.