SMEESTERS, Respondent, vs. NEW DENMARK MUTUAL HOME FIRE INSURANCE COMPANY, Appellant.

*March 16—April 11, 1922.*

*Insurance: Mutual companies: Conveyance or mortgage of insured property: Waiver of forfeiture: Knowledge of agent or officers of insurer: Trial: Special ·verdict: Omitted facts.*

1. Where a policy of insurance provided that the interest of the insured was not assignable except with the written consent of the insurer, and the property insured was mortgaged, sold, and again mortgaged by the new owner without the written consent of the insurer, the policy was void unless the forfeiture was in some manner waived.

2. A forfeiture arising from the sale of insured property without the written consent of the insurer was waived where the soliciting agent, with knowledge of the conveyance, requested a mortgagee to whom any loss was payable as his interest might appear to meet him at the scene of the fire with insured to adjust the loss, if the resulting inconvenience be

deemed sufficient to constitute a waiver (a fact not deter-mined in this case), though the agent did not know that the company had not consented to the transfer, where the in-surer's secretary testified that he knew it had not consented, the insurer being chargeable with the knowledge of both its agent and the secretary.

3. In an action on a fire insurance policy, the evidence is *held* in-sufficient to support a finding that the company's agent knew of a mortgage taken by the insured on the conveyance of the property to a third party or of a mortgage executed by the insured subsequent to the execution of the policy.

4. Under sec. 2858*m*, Stats., a question not submitted to the jury may be deemed determined by the court in conformity with the judgment only when there is evidence to support it.

5. The request of the agent that the insured and the mortgagee meet him to adjust the loss did not constitute a waiver of forfeiture arising from the execution of mortgages on the insured premises without the company's written consent, where neither the agent nor the company knew of such mort-gages, a "waiver" existing only where one, with full knowl-edge of a material fact, does or forbears to do something inconsistent with the existence of the right waived or his intention to rely thereon.

APPEAL from a judgment of the municipal court of Brown county: N. J. MONAHAN, Judge. *Reversed.*

On the 17th day of July, 1915, the *Denmark Insurance Company* issued to one Prosper Jacquart its fire insurance policy for $1,200 on a dwelling house the title to which then stood in the name of Prosper Jacquart and his wife. At that time there were two mortgages on the property, one for $1,475 owned by plaintiff and one for $200 executed to one John Simon. In the application for insurance, in re-sponse to a question as to the amount of the incumbrance on the premises, Jacquart disclosed the $1,475 mortgage but failed to reveal the existence of the $200 mortgage. On the 9th day of September, 1915, Jacquart executed a mort-gage covering the property to Julia and Mary Swillie to se-cure a note for the sum of $900. December 15, 1907, Jac-quart and wife conveyed the property to Louis Desotell, and on the same day Desotell executed to Jacquart a mortgage

on the same premises to secure the sum of $410, presumably a part of the purchase price. On August 2, 1918, the building was totally destroyed by fire. At the time of the fire the $1,475 mortgage owned by plaintiff had been reduced to $875. The Simon mortgage had been paid and satisfied. The Swillie mortgage had not been satisfied, but there was evidence to indicate that it had been paid.

On the 30th day of July, 1915, there was indorsed on the policy the following: "Loss if any on this policy payable to *Smeesters* as his mortgage interest may appear" (signed by the secretary). No similar indorsement was made on the policy with reference to any of the other mortgages. There was no consent on the part of the company to the transfer of the property from Jacquart to Desotell. One Buckman was a director of the insurance company and acted as agent in the matter of soliciting insurance in that community. He took Jacquart's application for insurance and signed the policy as president of the company.

Immediately after the fire the plaintiff telephoned to Buckman's residence to advise him thereof. Buckman was not at home, but his wife received the message. Upon his return Buckman called plaintiff on the phone and told him to meet him at the scene of the fire on the following morning and to bring Jacquart with him. The plaintiff lived about three miles from the premises, and Jacquart lived three and one-half miles from plaintiff's home. Plaintiff took his truck, got Jacquart, and drove to the premises to keep the appointment with Buckman, driving a total of about thirteen miles. The meeting was arranged for the purpose of adjusting the loss. When Buckman looked over the policy and saw that there was no mortgage consent clause indorsed thereon, except as to plaintiff's mortgage, and that the insurance company had not consented to the transfer of the property and assignment of the policy from Jacquart to Desotell, he declined to negotiate further upon the ground

that the policy was void because the consent of the company was not indorsed on the policy with reference to the other mortgages and the transfer from Jacquart to Desotell.

This action was brought to recover on the policy. The trial was before a jury. The jury returned a special verdict which will be referred to in the opinion. Upon the special verdict judgment was rendered in favor of the plaintiff, from which the defendant brings this appeal.

For the appellant there was a brief by *Evans & Merrill* of Green Bay, and oral argument by *W. L. Evans.*

For the respondent there was a brief by *Silverwood, Fontaine & McCreery* of Green Bay, and oral argument by *T. P. Silverwood.*

Owen, J. The insurance policy contains this provision:

"The interest of the insured in this policy is not assignable except with the consent of the company manifested in writing indorsed hereon or attached hereto and in case of any attempted transfer of this policy or a termination of the interest of the insured therein or in the property insured herein, either by sale or otherwise, without such written consent this policy shall thenceforth be void and of no effect."

Also the following provision:

"In case any person or persons insured in this company shall sell, convey, or assign such insured property during the time term of the policy, it shall be lawful for the insured to assign and deliver to the purchaser such policy of insurance, and the assignee shall then have all the benefit thereof, provided, that before any loss happens, he, she, or they shall have obtained the consent in writing of this company to such assignment and have had it indorsed on or annexed to the said policy."

And further:

"This policy shall be void if the subject of insurance be a building on ground not owned by the insured in fee simple or if the subject of insurance be personal property and become incumbered by a chattel mortgage or be realty and be-

come incumbered by a real-estate mortgage, unless the company shall consent thereto by writing indorsed hereon or annexed thereto."

It is undisputed that the consent of the company as to the Swillie mortgage, the transfer from Jacquart to Desotell, and the mortgage from Desotell to Jacquart were not indorsed on the policy. In view of the above quoted provisions from the policy, the absence of such consent so indorsed rendered the policy void unless the forfeiture thus created was in some manner waived. *Keith v. Royal Ins. Co.* 117 Wis. 531, 94 N. W. 295, and cases there cited. It is contended on the part of the plaintiff that the request proceeding from Buckman to *Smeesters* to meet him upon the premises and to bring Jacquart with him with a view of adjusting the loss imposed such a burden on the part of the plaintiff as to constitute a waiver of the forfeiture. Conceding for present purposes that the inconvenience caused the plaintiff in meeting Buckman upon the premises and in conveying Jacquart thereto was sufficient to constitute a waiver of the forfeiture, it should be borne in mind that the waiver applied only to such matters creating a forfeiture as were within the knowledge of Buckman or the company. The various transactions relied upon to constitute a forfeiture are, first, the execution of the Swillie mortgage; second, the conveyance from Jacquart to Desotell; and third, the mortgage from Desotell to Jacquart. It is conceded that Buckman had knowledge of the conveyance of the property from Jacquart to Desotell. Buckman claims, however, that while he had knowledge of the conveyance he did not have knowledge of the fact that the company had not consented to the transfer. However, the secretary of the company was sworn as a witness and testified that he knew that the company had not consented to the transfer. So the situation is this: Buckman had knowledge of the transfer. His knowledge was the knowledge of the company. The secretary had knowledge that the company had not consented

thereto by an indorsement on the policy. His knowledge of this fact was the knowledge of the company. The company, being chargeable with the knowledge of both Buckman and the secretary, knew of the transfer and knew that it had not consented thereto, so that plaintiff was requested to present himself at the premises with full knowledge of these facts on the part of the company, and if it should be held that the inconvenience thus resulting to the plaintiff was sufficient to constitute a waiver, the forfeiture arising from the transfer of the property from Jacquart to Desotell was waived.

However, there are two remaining transactions either of which constituted a forfeiture. They are the Swillie mortgage and the mortgage from Desotell to Jacquart. Buckman maintained that he did not know of the existence of the Jacquart mortgage. The jury found that he did. Appellant contends that there is no evidence to support this answer, and we are compelled to agree with this contention. No witness testified that he told Buckman, or any one connected with the company, of the existence of the mortgage from Desotell to Jacquart. *Smeesters* unqualifiedly admits that he did not tell him. Jacquart does not claim that he told him. Desotell was not even asked whether he had told him. The only testimony relied upon by respondent is the following from the cross-examination of Buckman:

"*Q.* But, knowing all about this situation and the title, you told him you were coming over there to adjust that loss, didn't you? *A.* Yes, but I did not know that he didn't have the policy sent over. I couldn't know that. *Q.* But before you told him to meet you to adjust that loss, you knew about the state the title was in, didn't you? *A.* I knew about the state of the title, how that was in, but I didn't know that he didn't have that policy sent over. *Q.* That was the only thing you didn't know? *A.* I supposed as a business man he would have sent that over when I directed him over the telephone."

Up to this point the examination of Buckman had dealt

entirely with the transfer from Jacquart to Desotell. *Smeesters* had told Buckman of the conveyance from Jacquart to Desotell. That is admitted by both the plaintiff and Buckman. Buckman testified that he told *Smeesters* to send his mortgage in so that the consent to the transfer might be indorsed thereon. *Smeesters* testified that Buckman assured him that his insurance was all right anyway. That was a sharply contested issue, and that was the only transfer affecting the title to which Buckman's attention had been attracted during the course of his prior examination, either direct or cross. We do not think this testimony can properly be construed as an admission on the part of Buckman that he knew of the existence of the mortgage from Desotell to Jacquart.

Some very vague and indefinite testimony was given by one Julian Romauld, which, it is claimed, furnishes a basis for the finding of the jury. He testified that he was present at the meeting between *Smeesters*, Jacquart, and Buckman and heard the conversation. He testified that he supposed that Buckman knew about the Desotell deed before he came there, because he talked about it, and that he heard no information given him there about the deed. He was further asked whether information was given to Buckman about the Jacquart mortgage, to which he replied, "Not that I know." He was asked whether he heard of the conversation and he replied, "Well, I was there right along." Upon cross-examination he testified that he did not hear anybody say that Jacquart had any mortgage, and that he did not hear anything that day as to whether Jacquart had a mortgage or did not have. He heard Buckman tell Jacquart that he couldn't get anything on his mortgage. We can discover no probative force whatever in this testimony as proof of the fact that Buckman knew of the existence of the Jacquart mortgage before he came to the meeting. In view of the fact that Buckman specifically denied having knowledge of the mortgage from Desotell to Jacquart, and

in view of the utter failure of proof that any one likely to have knowledge of the mortgage told Buckman about it, we are clear that the finding of the jury that he did have such knowledge is without any support in the evidence. Furthermore, there is no evidence at all that the company, or any one connected with it, at any time had knowledge of the Swillie mortgage, unless it be the testimony already referred to on the part of Buckman that he knew of the state of the title. Such, as already indicated, cannot be construed as proof of knowledge on the part of Buckman of the existence of the Swillie mortgage. The question whether or not Buckman or the company knew of the existence of the Swillie mortgage was not submitted to the jury, and the judgment is sought to be sustained on the ground that the court must have so found, by virtue of sec. 2858m, Stats., providing that such fact is to be deemed determined by the court in conformity with its judgment. But such a finding cannot be sustained without any evidence to support it any more than a finding of the jury. The statute referred to specifically provides that the finding or determination of such omitted fact by the court may be reviewed on appeal without any exception thereto. As "a waiver exists only where one with full knowledge of a material fact does or forbears to do something inconsistent with the existence of the right or of his intention to rely upon that right" (40 Cyc. 259), it must be held that the company did not waive the forfeiture arising by reason of the execution of the Swillie and Jacquart mortgages upon the insured premises. Such incumbrances, in the absence of the consent of the company, rendered the insurance policies void. *Keith v. Royal Ins. Co.* 117 Wis. 531, 94 N. W. 295. It follows that the action cannot be maintained, and that the plaintiff's complaint should be dismissed.

· *By the Court.*—Judgment reversed, and cause remanded with instructions to dismiss plaintiff's complaint.