KITCH, Assignee, and another, Respondents, vs. NORTH-
WESTERN NATIONAL INSURANCE COMPANY, imp., Ap-
pellant.

SAME, Respondents, vs. MILL OWNERS MUTUAL FIRE IN-
SURANCE COMPANY, imp., Appellant.

SAME, Respondents, vs. NORTH BRITISH & MERCANTILE
INSURANCE COMPANY, imp., Appellant.

*February 10—March 9, 1926.*

*Insurance: Forfeiture: By commencement of foreclosure proceed-
ings: By execution of chattel mortgage: Different insurers
represented by one attorney: Inference as to acts: Estoppel.*

1. A necessary element of estoppel is that the party relying on the
   same has done so to his disadvantage.   p. 387.
2. A fire insurance policy on realty is rendered void without any
   further act by the insurer, under the terms of the statutory
   policy, when foreclosure proceedings are begun against the
   insured property.   p. 388.
3. The evidence in this case is *held* not to show that the insurers
   were negligent in not sooner ascertaining when foreclosure
   proceedings against the property insured were begun, since
   it appears that they were misinformed by the attorney for
   the plaintiff in the foreclosure as to the precise date.   p. 388.
4. The fact that the four insurers were represented by a single
   attorney in a settlement of the loss under separate policies
   afforded no inference that everything done by him was done
   for each of them.   p. 388.
5. While every reasonable inference should be made to sustain
   insurance written and accepted in good faith, the facts should
   not be distorted and unnatural and unreasonable inferences
   resorted to.   p. 389.
6. The insurance companies in this case are not estopped to assert
   a forfeiture of the policies on the realty, against which fore-
   closure proceedings had been begun without giving notice to
   the insurers and procuring their consent thereto, because of
   a request for information, vouchers, etc., necessary to a set-
   tlement of the loss under a policy in which liability was con-
   ceded, where plaintiffs did nothing to their disadvantage
   which they would not have done had such policy been the
   sole insurance on the property.   p. 389.

Kitch v. Northwestern Nat. Ins. Co. 189 Wis. 378.

7. A fire policy covering a stock of merchandise is forfeited by the execution and delivery of a chattel mortgage without notice to the insurer; and where plaintiffs were repeatedly advised that forfeiture was claimed, the insurer is not estopped from asserting the fact.   p. 390.

APPEAL in each case from a judgment of the circuit court for Chippewa county: JAMES WICKHAM, Circuit Judge. *Reversed.*

Fire insurance. Separate actions were begun by the plaintiff *W. E. Kitch* as assignee against the *Northwestern National Insurance · Company* for $1,800, against the *North British & Mercantile Insurance Company* for $2,200, and against the *Mill Owners Mutual Fire Insurance Company* for $4,000, on account of the total destruction by fire on December 28, 1922, of a one and two story composition brick and veneered building in the city of Bloomer, title to which stood in Henry Jung and on which appellants had written Wisconsin standard form insurance policies for the amounts specified respectively. The *Mill Owners Mutual Fire Insurance Company* policy, in addition to the amount of insurance upon the real estate, covered $1,500 insurance on a stock of merchandise while the same was contained in the insured building, which stock was destroyed on December 28, 1922, by the same fire that destroyed the building. The *Mill Owners Mutual Fire Insurance Company* policy is dated July 3, 1922. The *Northwestern National Insurance Company* policy is dated March 4, 1922. The *North British & Mercantile Insurance Company* policy is dated June 10, 1922. There was also issued by the Home Insurance Company of New York on April 12, 1922, a policy for $3,000, $1,000 of which was on baker's and lunchroom fixtures; $1,000 on stock of confectionery and baker's goods; $500 on one bread and cake mixing machine, and $500 on household and kitchen furniture and utensils, all while contained in the building heretofore referred to.

The answer of the appellant companies disputed liability on the ground that the policy was void as to Henry Jung and the plaintiff *Kitch,* his assignee, in that (a) the interest of Henry Jung in the insured property at the date of the fire was other than unconditional and sole ownership, due to the foreclosure of the real-estate mortgage of Elizabeth Fehr prior to the date of the fire, without notice and without the written consent of the company attached to its policy; (b) that thereby the hazard was increased by means within the control and knowledge of Henry Jung and Elizabeth Fehr; (c) Henry Jung, in making a sworn statement after the fire, concealed the material fact of the foreclosure of the Elizabeth Fehr mortgage, and thus, in conjunction with his statement that he was the sole and unconditional owner of said property, falsely swore touching a matter relating to the subject of the insurance after the loss; (d) Henry Jung had other insurance without the written and signed consent of appellant attached to its policy; (e) after the issuance and delivery of defendant's said policy, Henry Jung executed and delivered a chattel mortgage on the personal property insured without notice to and without the written and signed consent of appellant attached to its policy; and it was further claimed that the policy was also void as to the plaintiff Carl Jung in that on August 23, 1922, he was served with a summons and notice of object of action in the suit brought to foreclose the real-estate mortgage of Elizabeth Fehr on the insured property, and failed to give notice to the defendants of said foreclosure and have the signed, written consent of the companies attached to the said policies.

Upon the trial there was no dispute as to the facts alleged in the defendants' answer and it was admitted that the commencement of the foreclosure action, without giving notice thereof and procuring written consent thereto, worked a

forfeiture of the policy; but the plaintiff contended·that the defendants were estopped from asserting such a forfeiture for the reason that, with knowledge of all the facts, the defendants severally requested information of the plaintiffs which put the plaintiffs to great inconvenience and expense, and that defendants were thereby estopped to claim the ben·efits of the admitted forfeiture.   The findings are slightly different in each case.   The findings in the *Mill Owners Mutual Fire Insurance Company Case* cover all of the material facts, and in that case the court found as follows:

"1. That on the 3d day of July, 1922, in consideration of the payment of a premium therefor, the defendant company issued to Henry Jung its Wisconsin standard form policy of insurance described in the plaintiff's complaint; by which it·insured against loss and damage by fire a certain building of said Henry Jung in the sum of $4,000 and a certain stock of merchandise in the sum of $1,500; that indorsed on said policy was a provision that the loss, if any, was payable to Carl Jung as mortgagee or trustee, as such interest may appear; that no agreement in writing or otherwise was made or added to the policy consenting that the personal property might be incumbered by a chattel mortgage; that no agreement in writing was made or added to the policy consenting that foreclosure proceedings be commenced on any mortgage or trust deed, except the mortgage given to Carl Jung; that no agreement was made or added to the policy consenting that other insurance be carried by the insured on any of said property.

"2. That on the 28th day of December, 1922, said property so insured was destroyed by fire.

"3. That the property destroyed by fire was at that time insured in other companies as follows:

"By a policy dated March 24, 1922, issued by the *Northwestern National Insurance Company* of Milwaukee, in the sum of $1,800 on said building.

"By a policy dated April 12, 1922, issued by the Home Insurance Company of New York, in the sum of $3,000 on certain personal property in said building, consisting of a

stock of merchandise, furniture and fixtures, household goods and machinery, of which amount the sum of $1,000 was on the stock of merchandise.

"By a policy dated June 10, 1922, issued by the *North British Mercantile Insurance Company*, in the sum of $2,200 on said building.

"4. That on the 27th day of September, 1922, the said insured incumbered the personal property so insured by a chattel mortgage given to the Peoples State Bank of Bloomer, in the sum of $1,150.

"5. That at the time of the issuing of said policy the real estate on which the building stood was incumbered by a mortgage given to Elizabeth Fehr in the sum of $4,000 and interest, and in the month of August, 1922, the said Elizabeth Fehr commenced an action against said insured to foreclose said mortgage, and judgment of foreclosure was entered in said action in the county court of. Chippewa county on October 20, 1922.

"6. That on the 9th day of February, 1923, said insured made in writing due proofs of said loss according to the terms of said policy, which proofs were duly verified and contained full information as to the other insurance on the property, the mortgages and liens thereon, including the chattel mortgage on the personal property, which proofs were mailed to the defendant company and received by it on or prior to February 13, 1923.

"7. That after the making of said proofs of loss the defendant company and the other insurance companies that carried insurance on the property destroyed acted together in the adjustment of said loss, claimed that they suspected that the fire was of incendiary origin, and that the amount of the loss on the personal property was much less than that claimed by the insured, and insisted that the loss as to all of said insurance be adjusted together and at one time.

"8. That at various times between the 9th day of February, 1923, and the 19th day of June, 1923, the defendant company, when it had full knowledge of all the grounds on which it now relies for the forfeiture of said policy, including the issuance of other insurance, the giving of a chattel mortgage, and the commencing of the foreclosure proceedings, demanded that the insured furnish it with an

inventory of the personal property destroyed by fire, and also that he furnish original invoices of merchandise purchased, duplicate invoices from parties who sold him the merchandise where the originals could not be produced, and itemized and certified statements of the bank accounts of the insured, all covering a period of time from the time the insured took his last inventory up to the time of the fire; that in the making of said demands said defendant company induced the insured to believe that, if a satisfactory adjustment could be made of said loss, the insurance would be paid, and pursuant to such demands the insured furnished all said information believing that said insurance would be paid, and in the furnishing of said information the insured and the plaintiffs who were acting with him were put to great inconvenience, lost considerable time, and incurred expense in excess of $150.

"9. That on the 19th day of June, 1923, the insured Henry Jung, the plaintiff *W. E. Kitch,* the defendant company, and the other insurance companies which had insured said property, entered into a 'non-waiver agreement' to ascertain the amount of said loss, and on the said day they signed and executed an agreement fixing and determining the amount of said loss as follows: on the building, $8,000; on the stock and merchandise, $1,703.42; on the store furniture and fixtures, $1,000; on the household goods, $500; on the furniture, $420.

"10. That said agreement, among other things, provided that the agreement 'creates no liability on the part of the insurance companies signing this agreement nor does it waive or invalidate any rights whatever of any party to this agreement.'

"11. That said Carl Jung holds a mortgage on the property, as alleged in the plaintiff's complaint.

"12. That after the time of said fire and prior to the commencement of this action, the said insured Henry Jung, for a valuable consideration, assigned and transferred to the plaintiff *W. E. Kitch,* for the benefit of certain creditors who had claims and liens upon the property insured, all money due said insured under the policy issued by the defendant company."

As conclusions of law I find:

"That the plaintiffs are entitled to judgment against the defendant company for the following amounts:

| | |
|---|---|
| For insurance on building .......... | $4,000 00 |
| For insurance on stock of merchandise, three fifths of $1,703.42, being its proportionate share .............. | 1,022 05 |
| For interest on $5,022.05 from August 18, 1923 ..................... | 231 01 |

Amounting in all to the sum of ......$5,253 06 —together with their costs of this action to be taxed; and let judgment be so entered."

In the *Northwestern National Insurance Company Case* the court found that the plaintiff was entitled to judgment for $1,800 with interest from August 18, 1923, and in the *North British & Mercantile Insurance Company Case* the court found that the plaintiffs were entitled to judgment against the defendant for $2,200 with interest from August 18, 1923. Judgment was entered in each case accordingly, and from each of the several judgments the defendants respectively appeal.

*William P. O'Brien* of St. Paul and *Roy P. Wilcox* of Eau Claire, for the appellants.

*J. G. Prueher* of Bloomer and *Dayton E. Cook* of Chippewa Falls, for the respondents.

Rosenberry, J. As indicated in the statement of facts, the sole question presented here for determination is whether or not the finding of the trial court to the effect that the defendants were estopped by their conduct to assert the forfeiture of the policies in question is sustained by the evidence. There is some indication that the defendant companies were suspicious as to the character of the fire and for a time thought there was reason to believe that it was of incendiary origin. It appears that in addition to

the mortgage given to Elizabeth Fehr to secure the payment of $4,000, which mortgage was dated March 12, 1918, the property was further incumbered by a mortgage owned by Carl Jung in the amount of $3,780, dated October 26, 1921; by a mechanic's lien amounting to $311.25 with interest from October 17, 1921; also one for $59.35; a third for $1,290.20; a fourth for $1,021.38; a fifth for $343.40. In addition thereto there was a chattel mortgage upon the stock of merchandise for $1,150, dated September 27, 1922.

It appears without dispute that Elizabeth Fehr commenced proceedings to foreclose her mortgage on August 23, 1922, and filed a *lis pendens* in the office of the register of deeds for Chippewa county on the 14th day of September, 1922. Judgment of foreclosure was entered in that action on October 20, 1922. On January 3, 1923, Mr. Moore, representing the Western Adjustment Company, which had charge of the loss, went to the scene of the fire to make investigation, and on that date was informed that the foreclosure proceedings under the mortgage of Elizabeth Fehr had been started before the date of the *Northwestern National Insurance Company* policy dated March 24, 1922, which was the earliest in time of the four policies. Thereafter the plaintiffs prepared and filed proofs of loss under date of February 9, 1923. In the proofs of loss no reference was made to the foreclosure action, but under the title "Incumbrances thereon" there appeared the following: "Mortgage dated March 12, 1918, for $4,000 with interest thereon at the rate of seven per cent. per annum, owned by Elizabeth Fehr." At this time it is undisputed that the mortgage had been reduced to judgment. Mr. Moore's investigations having aroused some suspicion about the character of the loss, the matter was turned over to Mr. William P. O'Brien, attorney at law, of St. Paul, Minnesota, who thereafter represented the insurance companies, including the Home Insurance Company. Mr. O'Brien went to Bloomer

on February 13, 1923, to continue the investigation. Relying upon the statement made to Mr. Moore that the foreclosure proceedings antedated the policies, no objection was made as to the payment of the loss on the realty; that the chattel mortgage upon the stock having been mentioned in the Home Insurance Company policy, that policy was valid; that as to the policy of the *Mill Owners·Mutual Fire Insurance Company* the existence of the chattel mortgage was not disclosed, and that as to the personal property that policy was for that reason void. It is claimed on the part of the attorney for the plaintiff, Mr. Prueher, that he exhibited to Mr. O'Brien at or about this time the foreclosure file, from which Mr. O'Brien made some memorandum. It does not appear what examination if any Mr. O'Brien made or whether or not the file contained information that would show when the foreclosure action was begun. In going over the records at a later time Mr. O'Brien noted that the statement as to the commencement of the foreclosure was not supported by any documentary evidence and wrote the Lord Abstract Company and ascertained for the first time the true date of the commencement of the foreclosure. On May 31st Mr. O'Brien sent to Mr. Prueher a statement of the loss of the property by the fire and nonwaiver agreement in duplicate and advised Prueher, who represented the plaintiffs, as follows: "As to the insurance on the realty, you understand that the companies claim that, due to a foreclosure of the first mortgage without their consent in writing, their policies are void."

The loss upon the stock and fixtures was fixed at $3,703.42. The building was conceded to be of a value in excess of the total amount of the insurance thereon. Under the law it was necessary, in order to ascertain the amount of loss apportionable to the various policies of insurance, to have full information in respect to the value of the property. Mr. O'Brien, after the 13th day of February and at various

times down to and immediately preceding the time of the ascertainment of the true date of the foreclosure action, did request certain vouchers, inventories, etc., as found by the trial court. There is no evidence that after knowledge of the true date of the commencement of the foreclosure action came to the attention of Mr. O'Brien as representative of the companies he requested any other or further information or put the plaintiffs to any other or further expense in any respect whatever. Upon his recommendation the Home Insurance Company paid $2,601.37 with interest. Settlement having been made with the Home Insurance Company, we are not concerned with the circumstances in connection with that further than to note that, in order to make settlement under that policy upon which liability was admitted, it was necessary to have all of the information furnished by the plaintiffs. Considerable stress seems to have been placed by the parties on the trial, by the court in its findings, and upon the argument here, upon the fact that the companies "acted together in the adjustment of said loss, claimed that they suspected that the fire was of incendiary origin and that the amount of the loss on the personal property was much less than that claimed by the insured; and insisted that the loss claimed by the insured be adjusted together and at one time."

This raises the question of whether or not a request made for information, vouchers, etc., necessary and proper for the settlement of the liability admitted under the Home Insurance Company policy is referable to the other policies, the request not having designated on which account the information, vouchers, etc., were requested. As it has been often pointed out, a necessary element of estoppel is that the party relying upon it has done so to his disadvantage. We search the record in vain for anything that the plaintiffs have done or failed to do to their disadvantage which they should not have done nor failed to do had the Home Insurance Com-

pany policy been the sole insurance upon the property. No appraisal of the building was required. Mr. O'Brien at the time of his visit to Bloomer satisfied himself that the construction cost far exceeded the insurance thereon, and no further demands were made in that respect, nor was the insured put to a single cent of expense with reference to the insurance upon the real property. Under the terms of the statutory policy when the foreclosure proceeding was begun, the policy was thereby and without any further act on the part of the insurer forfeited, rendered void and of no force or effect. *Macomber v. Minneapolis F. & M. Ins. Co.* 187 Wis. 432, 204 N. W. 331; *Keith v. Royal Ins. Co.* 117 Wis. 531, 94 N. W. 295; *Smeesters v. New Denmark M. H. F. Ins. Co.* 177 Wis. 41, 187 N. W. 986.

The plaintiffs can scarcely put forward the claim that the defendant companies were negligent in not ascertaining at an earlier date the time of the commencement of the foreclosure action. They received their information in that respect from the attorney for the plaintiff in the foreclosure action, and were not disposed 'to question the accuracy of the information furnished by the attorneys in this action until their suspicions were aroused a short time before the discovery of the actual fact. There was nothing to indicate to them that they had not the right to rely upon the information which they received, for, if the foreclosure suit was begun prior to the issuance of the policies, the exact date of its commencement was immaterial. They would have had a right to act upon the information so given them, but so far as the real estate is concerned they did absolutely nothing after the time proofs of loss were furnished, February 9, 1923. The mere fact that the four companies were represented by a single attorney does not afford a basis for the claim that everything done by the attorney was done by him for each of the companies. The information asked for with respect to personal property was referable to the pol-

·icies which purported to insure the personal property. This is a natural and reasonable construction to place upon the acts of the attorney. To claim that when he was seeking information in regard to personal property he was doing it for the benefit of defendants who had no interest therein, is to ignore the plain inference to be drawn from his acts. While every reasonable inference should be made to sustain insurance written and accepted in good faith, that does not mean that facts should be distorted and unnatural and unreasonable inferences resorted to. The correspondence between Mr. O'Brien and Mr. Prueher discloses that Mr. O'Brien asserted the invalidity of the *Mill Owners Mutual Fire Insurance Company* policy so far as it covered the personal property, because no notice of the execution of the chattel mortgage had been given. The statement that liability under that clause of the policy would be denied was repeated time after time. In order to make an adjustment, however, it was necessary, as plaintiffs well knew, for the companies to have full information in regard to the personal property. In order to adjust the loss they were entitled to have for the Home Insurance Company all the information requested. The plaintiffs were constantly advised that the *Mill Owners Mutual Fire Insurance Company* was claiming that so far as its policy covered personal property it was void. They were not in any way misled by the conduct of the *Mill Owners Mutual Fire Insurance Company*. In the face of these repeated declarations they could not have believed that it was to be uncontested. Upon the whole case it is considered that the policies upon the real estate in question were forfeited by the commencement of the foreclosure action without giving notice and procuring consent thereto, and that whatever was done by the attorney for the defendants in procuring information as to the value of the personal property was not referable to the insurance upon the real property and constituted no ground

of estoppel.   As to that part of the *Mill Owners Mutual Fire Insurance Company* policy covering the stock of merchandise, the same was forfeited by the execution and delivery of the chattel mortgage without notice; that the plaintiffs, having been repeatedly advised of that fact, were not in any way misled by the conduct of the *Mill Owners Mutual Fire Insurance Company,* and the company is in no way estopped from asserting the forfeiture of the policy so far as it concerns the insurance upon the stock of merchandise.

The mandate in each case will be, therefore, that the judgment appealed from is reversed, and cause remanded with directions to dismiss the plaintiffs' complaint.

*By the Court.*—It is so ordered.